UNITED STATES of America, Plaintiff-Appellee,

v.

Oliver WILSON, Defendant-Appellant.

No. 80–5149.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 19, 1980.

Decided Jan. 22, 1981.

## PER CURIAM.

Charles Oliver Wilson appeals his conviction of eleven counts of violating 18 U.S.C. §§ 2 and 1341, and seven counts of violating 18 U.S.C. §§ 2 and 1001. Appellant was the principal operator and president of C. Wilson Laboratory Associates, Inc., which provided testing service for Detroit area doctors. It also referred, pursuant to an agreement, testing requests for those patients insured under the federally funded medicaid program to Advance Laboratory of Dearborn, Michigan. For each referred request, Advance paid the Wilson Laboratory amounts up to $28.00.

During the time period relevant to the indictment, the Michigan medicaid program paid laboratories which performed eligible testing services by means of Michigan Treasurer's Warrants which were mailed to the laboratories. It was established at trial that the Wilson Laboratory personnel, at appellant's direction, created fictitious test requests. On a daily basis, they referred to Advance Laboratory test requests when no tests had been ordered by the physician, or requests for more comprehensive testing than that ordered. Advance copied the information from the requisition forms onto the billing forms which it submitted to the state, which in turn mailed payments to Advance.

Appellant contends that the mailings by the state agency were not sufficiently related to his scheme of supplying Advance with fraudulent claims information to sustain a conviction under the mail fraud statute, 18 U.S.C. § 1341.[1] He seeks support from *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

Charles S. Brown, Detroit, Mich. (court-appointed), for defendant-appellant.

James K. Robinson, U. S. Atty., Harold Z. Gurewitz, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before BROWN, KENNEDY and MARTIN, Circuit Judges.

---

1. The applicable parts of the mail fraud statute provide as follows:

    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do ... knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any [matter or thing whatever to be sent or delivered by the Postal Service] shall be fined not more than $1,000 or imprisoned not more than five years, or both. A person "causes" the mails to be used when he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended ...." *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954). There is abundant evidence to support the conclusion that appellant "caused" the use of the mails by the state agency.

▬▬▬▬▬▬

That case involved the § 1341 conviction of a man who obtained goods and services from motels by using a stolen credit card. The Supreme Court held that the mailings of the invoices by the motel operators to the bank which issued the credit card were insufficiently related to the defendant's scheme to bring his conduct within the statute. The Court observed that "Respondent's scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way upon which of his victims [the motel operator, the bank, or the credit card holder] ultimately bore the loss." 414 U.S. at 402, 94 S.Ct. at 649 (footnote omitted).

We agree with the government's argument that *Maze* is distinguishable. Appellant's scheme to defraud had not come to fruition prior to the mailings of the payments to Advance. The mailings were an integral part of an ongoing scheme, and essential to its success. *See United States v. Street*, 529 F.2d 226 (6th Cir. 1976); *United States v. Huber*, 603 F.2d 387, 400 (2nd Cir. 1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). That the Advance employees charged in connection with the scheme have been acquitted is irrelevant.

▬ Appellant's second contention challenges his conviction of violating 18 U.S.C. § 1001.[2] He asserts that there was insufficient proof that the false requisition forms related to a "matter within the jurisdiction of any department or agency of the United States." Appellant is raising this issue for the first time on appeal. The trial judge took judicial notice of this element of the offense, and instructed the jury accordingly. Having failed to object to this aspect of the charge at trial, appellant is precluded by Rule 30 of the Federal Rules of Criminal Procedure from arguing on appeal that it was error.

2. Section 1001 provides:
    Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or repre-

The judgment of the District Court, 490 F.Supp. 713, is affirmed.

sentations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.