770 F.2d 167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
KEVIN WILLIAMS, DEPENDANT-APPELLANT.
 NO. 83-1844
 United States Court of Appeals, Sixth Circuit.
 7/22/85
 
 E.D.Mich.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: WELLFORD and MILBURN, Circuit Judges; and PHILLIPS, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 Appellant Kevin Williams was indicated on a number of drug violations, including conspiracy to possess with intent to distribute cocaine, a Travel Act (18 U.S.C. Sec. 1952(b)(1)) violation, and also a separate offense, assault on a federal officer. Two co-defendants, Wayde and Adler, indicted with Williams, negotiated guilty pleas prior to trial on the drug related charges. From convictions on all counts except the assault charge (18 U.S.C. Sec. 111),[1] Williams has now appealed.
 
 
 2
 The first and major assignment of error made by Williams relates to the claimed defense of entrapment on the drug related offenses and the trial court's refusal to charge the jury on this defense. Williams' attorney asserted that he made timely notice of this claim and 'announced his intention to rely upon the entrapment defense at the time of opening statements to the jury.' (Appellant's brief at 8). He argued also, based in substantial part on appellant's testimony that entrapment occurred with respect to his involvement in drugs, because of a co-defendant's frequent contacts to solicit this activity. It is conceded in appellant's brief (p. 8) that 'appellant took the stand and admitted all the elements charged, i.e. conspiring to obtain, obtaining and transporting, and delivering the substance.'
 
 
 3
 Appellant acknowledges that United States v. Bryant, 716 F.2d 1091 (6th Cir. 1983), cert. denied, 104 S. Ct. 1006 (1984), requires that there be some evidence to support the theory of entrapment in order to warrant an instruction on this defense to the jury. He argues that contacts from others, who in turn had been induced to go into drug dealing by undercover government agents, urnished the element of improper inducement, and that appellant's own testimony supported his claim of no pre-disposition towards criminal involvement in controlled substances.
 
 
 4
 The unusual entrapment hurdle faced by defendant Williams, however, in this case is that he did not deal directly with undercover government officers. It is undisputed that undercover DEA agent Dennis Schoenrock first met with Williams' co-conspirators, Wayde and Adler, not with appellant. Wayde and Adler had a series of meetings with Schoenrock in the spring of 1983 to negotiate a shipment of cocaine from Florida. The unsuspecting co-conspirator Wayde was the party responsible for repeatedly contacting Williams and ultimately interesting him in supplying the drugs for the transaction. Wayde even told Williams that the cocaine was for his relative, according to appellant's testimony.
 
 
 5
 Williams testified that he became interested in supplying the cocaine for the transaction sometime during March or April 1983. He did not even meet the DEA agent until the night before the cash transaction alleged in the indictment on June 3, 1983. He did not even learn that Schoenrock was the prospective buyer until the night before the buy and expressed anger to his accomplices at this belated revelation.
 
 
 6
 Williams had two encounters with a paid DEA confidential informant named Bahadori. Williams and Wayde had known Bahadori when they were all students at college during the 1970's. Informant Bahadori introduced co-conspirator Wayde to undercover agent Schoenrock during March 1983. Earlier in March, Bahadori encountered Williams in a Fort Lauderdale night club and had asked him to supply some cocaine. Both Williams and Bahadori testified that Williams rejected the offers and denied being in the drug business only longer. Informant Bahadori also testified that this encounter was a chance meeting not previously planned as part of the DEA investigation.
 
 
 7
 Thus Williams is relegated to a theory of vicarious or 'indirect' entrapment. In United States v. Valencia, 645 F.2d 1158 (2d Cir. 1980), reh'g en banc denied, 669 F.2d 37 (2d Cir. 1981), aff'd after remand, 677 F.2d 191 (2d Cir. 1982), the Second Circuit embraced this form of entrapment theory, holding:
 
 
 8
 [i]f a person is brought in a criminal scheme after being informed indirectly of conduct or statements by a government agent which would amount to inducement, then that person should be able to avail himself of the defense of entrapment just as may the person who receives the inducement directly.
 
 
 9
 645 F.2d at 1168 (emphasis added).
 
 
 10
 This court, however, has been willing to consider only a modified form of the 'indirect' entrapment defense. In the recent case of United States v. McLernon, 746 F.2d 1098 (6th Cir. 1984), this court held that it has 'not adopted the indirect entrapment doctrine.' 746 F.2d at 1109.[2] The McLernon court refused to recognize the defense as well. Two defendants in McLernon argued that they participated in a drug conspiracy only because of coercion attributed to an undercover agent buyer through a middleman. The court refused to consider an indirect entrapment defense in the absence of 1) any 'special relationship' between the unsuspecting co-conspirators or 2) 'third-party agency' status of the middleman on behalf of the government.
 
 
 11
 This third-party agency exception, requiring the conscious assistance of the middleman to help the government, is an extension of entrapment theory. See, e.g., United States v. Russell, 411 U.S. 423 (1973); McLernon, supra, 746 F.2d at 1109. The 'special relationship' exception rests on the McLernon court's narrowing of the rationale in Valencia, supra, to the factual context presented in that case. Valencia factually involved the question of indirect entrapment of a husband by alleged inducement of his wife. The McLernon court recognized that 'governmental pressure upon one member in a special relationship such as marriage may overcome the will of another member to a greater degree by virtue of that relationship.' 746 F.2d at 1108 (emphasis added).
 
 
 12
 In this case, on the other hand, there was no evidence of co-conspirator Wayde serving as a middleman government 'agent' or any 'special relationship' between Wayde and defendant Williams. Thus Williams' defense of indirect entrapment was properly precluded as a matter of law by the trial court. There existed in this case no 'third party agency' between Wayde (or Bahadori) and the government through Schoenrock.[3] We find no merit, therefore, in the indirect entrapment claim.
 
 
 13
 The assault charge stemmed from the defendant's resistance to arrest by the undercover federal agents at the residence where the money exchange took place on June 3, 1983. After the appellant demanded money from the agents, undercover agent Schoenrock and female agent Naughton (posing as his girlfriend) announced that they were federal narcotics agents and that Williams as well as the other co-conspirators (Wayde and Adler) were under arrest. Both agents drew their weapons as they announced their identity.
 
 
 14
 A co-conspirator immediately tried to escape through another room. It is undisputed that agent Naughton approached Williams with her gun as agent Schoenrock pursued the fleeing co-conspirator. Williams initially complied with her request to turn around and put his hands on the wall. He then turned, however, and began to struggle with Naughton. Williams defended his actions on the ground that agent Naughton had not identified herself. There was disputed testimony about whether Williams ever actually gained possession of agent Naughton's gun.
 
 
 15
 It is not disputed, however, that agent Schoenrock returned to the room and shot defendant Williams in the thigh in going to Naughton's aid and in seeking to effect the arrest. Williams, however, struggled with Schoenrock and forced him to lose possession of his gun. Naughton recovered, finally shooting Williams, again to halt his resistance. In view of the uncertainty in the proof as to whether Williams was actually in possession of a gun during his assault upon and resistance to the federal officers, the court decided to instruct also on the lesser included offense of assault without a weapon.
 
 
 16
 Appellant failed to object to the jury instruction on the lesser included offense. Therefore by virtue of Fed. R. Crim. P. 30, he has waived this issue and cannot raise it on appeal unless he can show plain error. See United States v. Wilson, 639 F.2d 314, 316 (1981).
 
 
 17
 Appellant relies upon United States v. Rouse, 452 F.2d 311 (5th Cir. 1971), to buttress his argument that in the absence of an indictment charge on the lesser included offense, there can be no conviction. He claims therefore clear error despite his failure to object to this submission to the jury. Williams relies on a footnote comment in Rouse, which we do not feel supports his claim.[4] Rouse was charged with Section 111 assault upon federal officers (the use of a knife in resisting arrest). The issue in the case was whether the court had adequately instructed the jury on the 'use of a dangerous weapon [as] an essential element of the crime' charged in the indictment. 452 F.2d at 314-15. As pointed out by that court, 'the entire thrust of Rouse's defense was that the agents failed to properly identify themselves,' not that he had not used the knife 'to defend himself.' 452 F.2d at 314. This footnote comment was not necessary, in our view, to the discussion of the Rouse case, and it is not persuasive authority that the lesser crime set out in the first paragraph of Section 111 may not be submitted in a proper case of dispute as to whether a defendant used a dangerous weapon to assault a federal officer. The court did not give the lesser included offense charge here involved in Rouse.
 
 
 18
 A lesser-included offense instruction is only proper where the charged offense requires a jury to find a disputed factual element which is not required for conviction of the lesser-included offense.
 
 
 19
 Sansone v. United States, 380 U.S. 343, 350 (1965). The situation was appropriate for the submission of the lesser-included offense charge in the instant case, and there was no objection to preserve the alleged error.
 
 
 20
 We also find no error in the joinder of the assault count with the other drug related offenses. There was no misjoinder shown since the assault offense was committed in the course of the illegal drug conduct charged. The very basis of the federal officers' actions at the time of the attempted arrest was to arrest appellant for his part in the drug transaction.
 
 
 21
 Accordingly, we AFFIRM the conviction on all counts and the judgment of the district court below.
 
 
 
 [1]
 Williams was convicted of the lesser included offense of assault on a federal officer without a weapon, although he was indicted for assault with a dangerous weapon
 
 
 [2]
 The 'indirect entrapment' doctrine has also been rejected in United States v. Mers, 701 F.2d 1321, 1340 (11th Cir.), cert. denied, ---- U.S. ----, 104 S. Ct. 482 (1983); United States v. Leraux, 738 F.2d 943, 947 (8th Cir. 1984); and United States v. Shapiro, 669 F.2d 593, 597-98 (9th Cir. 1982)
 
 
 [3]
 As stated, there was no 'special' relationship, such as marriage, involved so as to trigger an indirect entrapment claim. Finally, there was simply no proof of government inducement of Williams under the circumstances. Accordingly, an entrapment instruction was not indicated nor was it required
 
 
 [4]
 'Rouse was not indicted for and could not have been convicted for the crime defined in the first paragraph of Section 111.' United States v. Rouse, 452 F.2d at 314 n.4