Rehearing in banc granted by order filed 2/9/99.
Opinion filed 12/17/98 is vacated.

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 97-4498

ERIC ARTHUR WALTON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 97-4537

ELDRIDGE MAYFIELD, a/k/a Sippy,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-96-41)

Argued: October 28, 1998

Decided: December 17, 1998

Before WIDENER and WILKINS, Circuit Judges, and
G. ROSS ANDERSON, JR., United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gerald Grant Ashdown, WEST VIRGINIA UNIVER-
SITY SCHOOL OF LAW, Morgantown, West Virginia, for Appel-
lant Mayfield; Jay Thornton McCamic, MCCAMIC & MCCAMIC,
Wheeling, West Virginia, for Appellant Walton. David Earl Godwin,
OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg,
West Virginia, for Appellee. **ON BRIEF:** Bren Pomponio, Student
Attorney, WEST VIRGINIA UNIVERSITY SCHOOL OF LAW,
Morgantown, West Virginia, for Appellant Mayfield. William D. Wil-
moth, United States Attorney, Paul T. Camiletti, Assistant United
States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Eric A. Walton ("Walton") and Eldridge Mayfield ("Mayfield")
appeal their convictions for conspiracy to influence a petit juror in
violation of 18 U.S.C. §§ 2, 371, 1503(a), and 1503(b)(3); and for aid-
ing and abetting in the attempt to influence a petit juror in violation
of 18 U.S.C. §§ 2, 1503(a), and 1503(b)(3).

Defendants appeal on two grounds. First, Defendants allege the
trial judge abused his discretion by not allowing counsel for Defen-
dants to impeach the credibility of the government's key witness,
Doris Kaiser, with proffered testimony from two other jurors. Second,
Defendants appeal on grounds that the trial judge erred by not defin-
ing reasonable doubt, even after the jury requested such definition.
For the reasons set forth below, we affirm the judgment of the district
court.

2

I.

Walton was tried and convicted of drug offenses in the Northern District of West Virginia in April, 1994. Following his conviction, a juror advised the court that another juror, Doris Kaiser, had been approached during the trial in an attempt to influence her vote. Subsequently, Walton and Mayfield were indicted for: (1) conspiracy to influence a petit juror in violation of 18 U.S.C.§§ 2, 371, 1503(a), and 1503(b)(3); and (2) aiding and abetting in the attempt to influence a petit juror in violation of 18 U.S.C. §§ 2, 1503(a), and 1503(b)(3). Walton and Mayfield were convicted of these charges, and now appeal.

At the jury tampering trial, the government called several witnesses, including Walton's wife, Lori Walton, and Doris Kaiser. Lori Walton's credibility as a witness was severely attacked. Thus, Defendants argued that the testimony of Doris Kaiser was an integral part of the government's case.

The testimony revealed that Walton instructed his wife, Lori Walton, to take the jury list to Mayfield, who indicated he might know one of the jurors. Mayfield was to offer the juror $10,000 to acquit Walton. In return, Walton would forgive a debt of $6,000 owed to him by Mayfield. Mayfield then approached Doris Kaiser, and offered her $5,000 to vote for acquittal. Doris Kaiser did not immediately report this to the court.

At trial, counsel for Defendants asked Doris Kaiser the following question: "Had you ever told anyone else in the entire world about this prior to the time on the 20th when you would have had the jury together there in the room during your deliberations?" She answered, "No." Defendants also asked her "Did you ever ask any of the other jurors what they would do if they were offered money to make a certain decision in this case?" She answered "No."

Defendants later proffered the testimony of jurors Marta Sturm and Judith Catterton that Doris Kaiser asked them at lunch one day during the trial but before deliberations, "What would you do if someone offered you money?" Defendants argued this proffer was a material issue in the case and that it was necessary to Defendants' cross-

3

examination of Doris Kaiser on the issue of her credibility because it contradicted her answer that she never told anyone else about being approached by Mayfield prior to deliberations. The district court ruled that the proffered evidence was extrinsic and refused to admit it for the purpose of impeaching Doris Kaiser's credibility under FED. R. EVID. 608(b).

II.

This Court reviews the district court's evidentiary rulings for abuse of discretion. United States v. Ford, 88 F.3d 1350, 1362 (4th Cir. 1996).

This Court reviews the district court's decision not to define reasonable doubt for abuse of discretion. See United States v. Rieves, 15 F.3d 42, 46 (4th Cir. 1994) (stating "trial judge should treat such inquiries in like manner as in explaining any other[jury] instruction.").

III.

Defendants present three arguments on the issue of the trial judge's decision not to admit the proffered testimony: (1) F ED. R. EVID. 608(b) did not bar the testimony because it was material, not collateral; (2) FED. R. EVID. 606(b) does not preclude the proffered testimony because the statements were not made during deliberations; and (3) FED. R. EVID. 613(b) did not bar the testimony because it established proof of a prior inconsistent statement.

A.

Defendant presents two arguments to overcome the F ED. R. EVID. 608(b) bar on credibility impeachment via extrinsic evidence: (1) the proffered testimony is material to the issue of whether or not Mayfield offered Doris Kaiser money to acquit Walton; and (2) Doris Kaiser was the government's principal witness, therefore, her credibility was a material issue in the case, not a collateral issue. We disagree with each argument.

FED. R. EVID. 608(b) states in relevant part that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in [FED. R. EVID.] 609, may not be proved by extrinsic evidence." However, FED. R. EVID. 608(b) does not bar extrinsic evidence if it is material to an issue in the case. United States v. Smith Grading and Paving, Inc., 760 F.2d 527, 531 (4th Cir. 1985).

Defendants argue that the proffered testimony is material to the issue of whether or not Mayfield offered Doris Kaiser money to acquit Walton. At best, the proffered testimony of Sturm and Catterton was relevant only to the issue of whether or not Doris Kaiser lied about the frequency of her conversations with other jurors about Mayfield's bribe offer.

Defendants next argue that because Doris Kaiser was the government's principal witness, her credibility was a material issue in the case, therefore, FED. R. EVID. 608(b) does not bar the proffered evidence for the purpose of impeaching her credibility. Defendants argue that United States v. Higa, 55 F.3d 448 (9th Cir. 1995), supports the proposition that the credibility of a key or principal government witness is a material issue. Id. at 452. In Higa, the district court admitted evidence of prior inconsistent statements by an alleged co-conspirator. Id. at 451-52. In Higa, however, the Ninth Circuit recognized that the evidence might be extrinsic, but admitted it both as a prior inconsistent statement under FED. R. EVID. 613(b), and because it was material to the issue of whether or not the defendant participated in the conspiracy. Id. at 452. Higa merely indicates that there are two ways to overcome the bar on credibility impeachment via extrinsic evidence under FED. R. EVID. 608(b) -- the material evidence exception, and by laying a foundation to show the existence of a prior inconsistent statement under FED. R. EVID. 613(b). See United States v. Cobb, 905 F.2d 784, 787 n.5 (4th Cir. 1990).

The proffered evidence was not material to an issue in the case; therefore, the issue becomes whether the Defendants established proof of a prior inconsistent statement under FED. R. EVID. 613(b)?

Defendants did not lay a proper foundation to show that the statements in question fell within the ambit FED. R. EVID. 613(b). Doris

5

Kaiser's answer at trial is a denial of ever having told anyone "about this" prior to deliberations. The proffered evidence is a vague question. It contains no specific information about what Mayfield offered Doris Kaiser to acquit Walton.

To impeach a witness, the two statements must be sufficiently specific to establish their contradictory nature. See e.g., United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir. 1988) (holding prior inconsistent statement under FED. R. EVID . 613(b) need not be a flat contradiction, but must afford some "indication that the fact was different from the testimony of the witness whom it sought to contradict."). Defendants' counsel admitted the proffered statement was ambiguous at trial when they stated that "[the proffered evidence] could be interpreted several different ways."

While the text of FED. R. EVID. 613(b) does not require a foundation, it is clearly the better practice to lay a foundation in most circumstances. See United States v. Barrett, 539 F.2d 244, 255 (1st Cir. 1976) (quoting the Reporter of the Committee on Rules of Practice and Procedure, of the Judicial Conference of the United States); United States v. Wilson, 490 F. Supp. 713, 719 (E.D. Mich. 1980), aff'd, 639 F.2d 314 (6th Cir. 1981). Laying a proper foundation entails drawing the witness' attention to "the time when, place where, and person to whom the alleged statement was made, and asking the witness whether under those circumstances he made substantially that statement." Hearings before the Subcomm. On Criminal Justice on Proposed Rules of Evidence, 93d Cong., 1st Sess., ser. 2, at 74-75 (Supp. 1973). This foundation serves many purposes, including that of fairness to the witness by giving the witness an opportunity to explain or deny any discrepancy. See id.

We find that the district court did not abuse its discretion in excluding the proffered evidence as it was not material to an issue in the case, and because no foundation was laid to establish the existence of a prior inconsistent statement under FED. R. EVID. 613(b). Therefore, we affirm the decision of the district court to exclude the proffered evidence.

B.

Defendants next argue that FED. R. E VID. 606(b), which protects the sanctity of the jury's deliberative processes, does not preclude the

6

proffered testimony, because the statements at issue were not made during deliberations. Because we find that the trial court did not abuse its discretion under FED. R. EVID . 608(b), we need not address whether or not the district court properly excluded the evidence under FED. R. EVID. 606(b).

C.

Defendants finally argue that the proffered testimony established proof of an inconsistent statement for which impeachment via extrinsic evidence is permissible under FED. R. EVID. 613(b).

We find that Defendants did not properly preserve this issue for appeal. See United States v. Parodi, 703 F.2d 768, 783 (4th Cir. 1983) (stating that "to preserve for appellate review an objection to evidence, the objection must be `(1) specific, (2) timely, and (3) of record.'" [citations omitted]). At a bench conference the court asked, "[H]ow is that an inconsistent statement?" After some clarification, counsel for defendant Mayfield responded, "Your honor, to answer your question, I am not sure it falls into the inconsistent statement rule." Shortly thereafter, the district court stated that "[the proffered evidence] is definitely not a 613(b) situation of a prior inconsistent statement." Neither defendant objected to the district court's statement. See Parodi, 703 F.2d at 783. Accordingly, we find no need to address this issue because Defendants did not properly preserve it for appeal.

IV.

Defendants finally argue that the district court erred by not defining reasonable doubt for the jury, even after the jury requested a definition of reasonable doubt. During deliberations, the jury asked two questions: (1) "What is the definition of reasonable doubt?" and (2) "Is the transcript of Doris [Kaiser's] testimony available?" The district judge did not provide a definition of reasonable doubt, and pointed out that he had already advised the jury that transcripts of trial testimony would not be available. Defendants argue that these two questions indicate the jury was confused over the burden of proof and the risk that they might convict upon a lesser showing than required by

7

due process. Therefore, Defendants argue, the district court should have defined reasonable doubt for the jury. We disagree.

A.

The rule regarding defining reasonable doubt for the jury is well-settled in this Circuit -- a trial judge may define reasonable doubt only if the jury requests a definition; however, the trial judge is not required to provide a definition, even if the jury requests it. United States v. Rieves, 15 F.3d at 46.

Rieves squarely addresses the issue of reasonable doubt instructions as presented in this appeal. In Rieves, we held that allowing a trial court to define reasonable doubt upon the jury's request is an exception to the general rule condemning any attempt to define the term. Id. at 45.

Defendants argue that Rieves is an aberrational case, and that United States v. Oriahki, 57 F.3d 1290 (4th Cir. 1995), controls in this Circuit. We disagree.

We find nothing in Oriahki overruling or creating exceptions to the rule as stated in Rieves. Oriahki does not even address the issue of defining reasonable doubt upon request by the jury. In Oriahki, the defendant, not the jury, requested the reasonable doubt definition. Oriahki, 57 F.3d at 1300.

B.

Defendants next argue that Oriahki requires a definition of reasonable doubt when requested by the jury because if such definition is not given, the jury may convict on a lesser standard of proof. Oriahki, 57 F.3d at 1300. Our recent holding in United States v. Williams, 152 F.3d 294, 298 (4th Cir. 1998), addresses this argument. In Williams, defendant argued that a jury instruction that repeated the term "reasonable doubt" throughout was improper because it impermissibly lessened the burden of proof required for a criminal conviction. Id. In response to this argument, we stated that this type of instruction "[leaves] `reasonable doubt' to its `self-evident meaning comprehen-

8

sible to the lay juror.'" <u>Id</u>. (quoting <u>United States v. Adkins</u>, 937 F.2d 947, 949 (4th Cir. 1991) (citations omitted)). Our cases hold that the risk of conviction by a constitutionally deficient burden of proof arises when the district court attempts to define reasonable doubt, not when it refuses to do so.

For the foregoing reasons, we find that the district judge did not abuse his discretion in this instance. Accordingly, we affirm the decision of the district court to not define reasonable doubt for the jury even after the jury requested such definition.

V.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

9