RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

     *v.*

JOHNNY JENKINS,
                    *Defendant-Appellant.*

No. 08-5203

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 07-20039-001—Jon Phipps McCalla, Chief District Judge.

Argued: December 4, 2009

Decided and Filed: February 9, 2010

Before: GRIFFIN and KETHLEDGE, Circuit Judges; CARR, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Kevin Michael Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Kevin G. Ritz, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Kevin Michael Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Kevin G. Ritz, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

KETHLEDGE, Circuit Judge. Sometimes the prosecution should be careful what it asks for. Here, the government charged Jenkins with drug and gun crimes for which

---

[*] The Honorable James G. Carr, Chief Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

it had ample evidence to convict him.  In what can be fairly described as piling on, however, the government sought to admit—and eventually did admit, over Jenkins's objection—testimony that he had been convicted of an unrelated drug offense some eight years earlier.  That testimony made the government's task easier at trial, but makes it much harder here.  We agree with Jenkins that the evidence of his prior conviction was substantially more prejudicial than probative.  We therefore vacate his convictions and remand the case for a new trial.

I.

On July 3, 2006, officers with the Dyersburg, Tennessee Police Department executed a search warrant at 1217 Fair Street in Dyersburg.  Jenkins and three other persons were in the yard outside the house when the police arrived.  Jenkins's father was the caretaker of the house, but it was undisputed at trial that several people had free access to it, Jenkins included.  Jenkins himself told the police that he lived there part-time.

The officers found drugs and guns in virtually every room of the house, most of which lay in plain view on tables or bookshelves.  In the house's only bedroom, officers found Jenkins's drivers license, pay stubs, bank cards, work-ID badge, numerous bags of marijuana—including one on a nightstand next to his drivers license—digital scales, and a loaded .38 caliber pistol.  All told, the officers seized 22.4 grams of crack cocaine, 374.4 grams of powder cocaine, 1.9 kilograms of marijuana, several sets of scales, baggies, and other drug paraphernalia, body armor, over $13,000 in cash, three pistols, a rifle, and two shotguns.  Many of the weapons were loaded.

Jenkins was thereafter charged with possession with intent to distribute marijuana, cocaine, and cocaine base—with each drug the basis of a separate count—in violation of 21 U.S.C. § 841(a)(1).  He was also charged with possessing a firearm in furtherance of a drug crime and with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 924(c) and 922(g), respectively.

Jenkins elected to try his case. Whether he (as opposed to someone else) constructively possessed the guns and drugs in the house was the principal issue at trial. The government elicited testimony that Jenkins had restored electrical service for the house on four occasions between July 1998 and April 2005. Over Jenkins's objection, the government also elicited testimony that, in 1998, Jenkins had been convicted of an unrelated charge of possession with intent to distribute marijuana. The government further introduced expert testimony, again over Jenkins's objection, from Tennessee Bureau of Investigation Special Agent Lee DeArmitt, to the effect that the drug quantities, firearms, and scales found at the residence were consistent with the distribution of drugs rather than mere personal use.

The jury convicted Jenkins on all five counts, and the district court sentenced him to 180 months' imprisonment. This appeal followed.

II.

A.

Jenkins challenges the sufficiency of the evidence supporting his convictions. We ask "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). "[C]ircumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt." *United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir. 2002).

The element at issue here is possession, since Jenkins argues only that the government failed to prove that he "had custody and control" of the guns and drugs. Def. Br. 13. Possession may be actual or constructive, and need not be exclusive. *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005). That a defendant "knowingly has the power and the intention at a given time to exercise dominion and control over an object" is sufficient to establish constructive possession. *Id.*

Here, Jenkins was present at the residence on the day the drugs and guns were found; he had unlimited access to the house; he lived there part time; he repeatedly restored electrical service there; his parents testified that he stored personal property there; and a gun, scales, and baggies of marijuana were found with Jenkins's drivers license and other personal papers in the house's only bedroom. This evidence easily permitted the jury to find that Jenkins had the power and intention to exercise control over the guns and drugs in the house. We therefore reject this argument.

B.

Jenkins challenges two of the district court's evidentiary rulings. One can be handled summarily. Jenkins argues that the district court erred in allowing Special Agent DeArmitt to testify as an expert about drug-dealer customs without first obtaining any "specific information on DeArmitt's basis for knowledge" about them. Def. Br. 11. But DeArmitt testified that he had surveilled drug transactions 300-400 times, participated in the execution of search warrants in 50-100 drug cases, and been involved in the arrests of several hundred suspected drug dealers. We think that testimony described an ample basis of knowledge for the opinions offered. So we reject this argument.

Jenkins's other argument is problematic. He argues that the district court should not have admitted, under Fed. R. Evid. 404(b), evidence of his 1998 drug conviction. That rule provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

We review "a district court's evidentiary determinations under Fed. R. Evid. 404(b) for abuse of discretion." *United States v. Jenkins*, 345 F.3d 928, 936 (6th Cir. 2003); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997) ("abuse of discretion is the proper standard of review for a district court's evidentiary rulings"); *Trepel v.*

*Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) (*Joiner*'s holding that *all* evidentiary rulings are subject to abuse-of-discretion review "rather clearly means what it says").

The challenged evidence concerned Jenkins's 1998 conviction for possession with intent to distribute marijuana. That conviction arose from an incident in which Jenkins was sitting with some other persons in a parked vehicle outside the same residence at issue here, 1217 Fair Street. A bike-patrol officer passed by and noticed a strong smell of marijuana. He investigated and eventually found four bags of marijuana on Jenkins's person. Jenkins later pled guilty to the distribution charge.

Prior to trial here, the government argued that evidence of Jenkins's 1998 conviction was relevant to Jenkins's "knowledge and intent," both of which are elements of the drug offenses. In the government's view, that Jenkins possessed marijuana with intent to distribute at 1217 Fair Street in 1998 tended to show that he knowingly possessed marijuana, crack cocaine, and powder cocaine at the same address with the same intent in 2006. Jenkins responded that the evidence merely showed propensity—that it was offered primarily "to prove the character of a person in order to show action in conformity therewith[,]" Fed. R. Evid. 404(b)—which is a purpose expressly proscribed by the rule.

The district court initially expressed misgivings about the evidence, stating that "I'm not sure [the government] made the appropriate showing[.]" Eventually, however, the court found the evidence relevant to knowledge and intent. The court also found that "the unfair prejudice appears to be outweighed in this case by the probative value of the evidence," though unfortunately the court did not explain why it thought that was so. In any event, Officer Thayer testified at trial about the facts surrounding Jenkins's 1998 conviction. The district court gave an appropriate limiting instruction afterward.

So now the issue is before us. We first consider whether the evidence was relevant to Jenkins's knowledge and intent. Both were at least nominally at issue in his trial, since he pled not guilty and did not stipulate to either element. But we do not think the issue of knowledge was at issue in any meaningful sense. Whoever possessed all

these drugs laying in plain view throughout the house obviously did not do so inadvertently. Thus, as a practical matter, the issue of knowledge was subsumed by that of possession. Knowledge did not stand on its own bottom as an issue in Jenkins's trial; and thus the admission of his prior conviction cannot be bottomed on it either.

That leaves the issue of intent. To some extent, the same reasoning applies to this element: Whoever possessed drugs in these quantities likely meant to sell some of them. It is unclear, moreover, whether Jenkins actually contested this issue at trial. But our decision *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994), can be read to mean that, even under these circumstances, Jenkins's specific intent was at issue for purposes of Rule 404(b). *See id.* at 1992.

That leaves unanswered, of course, the question whether proof of Jenkins's prior convictions was *probative* of that issue as well. Our precedents are hard to reconcile on this point. *Compare*, *e.g.*, *id.* ("where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent") *with United States v. Bell*, 516 F.3d 432, 444 (6th Cir.2008) ("to be probative of a defendant's present intent to possess and distribute, his prior convictions for drug distribution must be related in some way to the present crime for which the defendant is on trial").

But that reconciliation is one we need not effect today. For—whether the evidence is probative under our precedents, or not—where the government surely runs into trouble is in the balancing of probative value and prejudicial effect under Rule 403. Even if we assume for purposes of argument that evidence of Jenkins's prior conviction had some probative value, that value is microscopic at best. And that value becomes invisible to the naked eye when the evidence is thrown in with the rest of the evidence in the case. "One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof." *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996). Even the government argues—in suggesting that any error in the admission of the prior-conviction evidence was harmless—that its "*other* evidence of knowledge and intent to distribute in this case was overwhelming." Gov't Br. 27

(emphasis added). That amounts to a concession that the admission of this evidence, for this purpose, was merely piling on.

And meanwhile there looms, Kong-like, the prejudicial effect of the prior conviction. "When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact." *Johnson*, 27 F.3d at 1193. Even when properly instructed to consider the evidence only for some legitimate purpose—as the jury was instructed here—the danger is obvious that the jury will treat it as propensity evidence instead. Under the facts presented here, we are firmly convinced that the prejudicial effect of Jenkins's prior conviction substantially outweighed its probative value. The admission of that evidence was error.

There remains the question whether the error was harmless. The government says it was, because the other evidence of "knowledge and intent" was overwhelming. But the charged offenses had an additional element—namely, possession. That element was indeed the battleground at trial. And the government's evidence on that issue, though solid, was not overwhelming; this was, after all, a case of only constructive possession. We cannot say with "fair assurance" that the admission of testimony concerning Jenkins's 1998 arrest and conviction did not "substantially sway[]" the result at trial. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). The error therefore was not harmless.

Jenkins's convictions and sentence are vacated, and the case remanded for a new trial.