NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0476n.06

No. 09-5245

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 04, 2010
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROY BURCHAM,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

Before: MARTIN, RYAN, and KETHLEDGE, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. Defendant-appellant Roy Burcham was convicted of possession of stolen firearms, pursuant to 18 U.S.C. § 922(j), and of being a felon in possession of those firearms, pursuant to 18 U.S.C. § 922(g). How the authorities came into possession of those firearms is the primary subject of Burcham's appeal. He also appeals an evidentiary ruling that, he claims, prevented him from impeaching one of the government's witnesses. We affirm.

**I.**

On January 19, 2002, Officers A.C. Brown and James Kellum, both of the Memphis, Tennessee Police Department, were on patrol when they received word that other officers were searching for Burcham as a suspect in an aggravated assault involving a baseball bat. Officers Brown and Kellum had previously heard from a confidential informant that Burcham had stolen some firearms and still was in possession of those firearms. They proceeded to the area where they believed Burcham might be found. Sure enough, the officers found Burcham sitting in his truck at

a gas station. A woman, later identified as Jennifer Kinsella, Burcham's girlfriend, was with him in the truck.

The officers detained Burcham and found a baseball bat in the cab of the truck, so they arrested him on the aggravated assault charge. Other officers transported Burcham to jail. Officers Brown and Kellum remained on the scene with Kinsella and questioned her about the stolen firearms that they had previously heard about. What happened next is disputed and will be discussed in more detail below. But, at the end of these disputed events, the officers found themselves in a storage unit rented by Burcham, where they discovered several firearms that they subsequently determined to have been stolen. After unsuccessfully seeking to suppress the firearms as a product of an impermissible search, Burcham proceeded to trial. The jury convicted Burcham on all counts, and he was eventually sentenced to ninety-two months' incarceration followed by two years of supervised release.

Burcham now timely appeals the district court's denial of his motion to suppress the firearms, as well as one of the court's evidentiary rulings during trial.

## II.

### A.      Motion to Suppress

The circumstances surrounding how the officers gained access to the storage unit were disputed. Officers Brown testified at the hearing on the motion to suppress, as did Burcham and Kinsella. The prosecutor also proffered the testimony of Officer Kellum. The versions of events offered by the two camps differed drastically.

Officers Brown and Kellum testified that they had heard from an informant that Burcham had stolen some firearms and was keeping them at a storage unit. Officer Kellum even indicated that he knew from the informant where the storage unit was located. The officers claimed that they asked Kinsella if she knew anything about the firearms and the storage unit. They testified that Kinsella responded in the affirmative and indicated that she had access to the unit, including the access code for the facility's gate and the key to the lock on the individual storage unit. She signed a handwritten statement indicating that Burcham told her that he had purchased some firearms that had been stolen from a hunting lodge by another man, that he had then re-sold the firearms to his brother, and that the firearms were in a mini-storage unit at 5570 Summer Avenue. She also signed a consent form indicating that she was aware of her right to refuse consent to search the storage unit and that her permission to search the unit was given voluntarily and absent any threats or promises. The officers testified that Kinsella thereafter accompanied them to the storage unit and provided the access code and key. They described her as having been cooperative the entire time. The officers also indicated that the manager of the facility initially said that the officers needed a warrant, but he backed off when he learned that Kinsella had the access code and the key.

Kinsella and Burcham testified to a vastly different chain of events. Primarily, they testified that Kinsella did not know the access code for the storage facility and did not have the key to the lock on the storage unit. Instead, Burcham claimed that he kept a key to the lock on his key ring and kept the access code written on a piece of paper in his wallet and that the officers must have taken these items from his truck after he was taken to jail. They testified that Kinsella did not have authority to consent to a search of the storage unit and that her consent was coerced by the officers.

Following the hearing on the suppression motion, the magistrate judge issued a Report and Recommendation rejecting Kinsella's and Burcham's testimony and crediting that of the officers and, on that factual basis, concluding that the motion should be denied. Burcham objected to both the magistrate judge's credibility determination and his legal conclusion. The district court thereafter issued an order adopting the magistrate's recommendation in whole, finding that the magistrate's conclusion was not clearly erroneous.

Following trial, Burcham appealed the suppression ruling on several bases, one of which being that the district court employed the wrong standard of review in ruling upon Burcham's objections to the magistrate's Report and Recommendation. The government conceded that the court had improperly employed the "clearly erroneous" standard of review instead of engaging in a de novo review of the contested portions of the magistrate's report as required by 28 U.S.C. § 636(b). We therefore remanded the case to the district court with instructions to engage in a de novo review of the portions of the magistrate's findings to which Burcham objected. On remand, the court issued a second order adopting the magistrate's findings and therefore denying the motion to suppress. On this second appeal, Burcham contends that the district court again failed to engage in a de novo review of the magistrate's credibility determination and that the court incorrectly analyzed the issue of Kinsella's authority to consent to the search.

**1.     De Novo Review of Credibility Determination**

The magistrate found the testimony of Officers Brown and Kellum credible and the testimony of Burcham and Kinsella incredible and thus accepted the officers' version of events as the factual basis for ruling upon the motion to suppress. Burcham objected to this credibility finding. In ruling

upon Burcham's objection, the court was "both statutorily and constitutionally required" to engage in a de novo review. *United States v. Worley*, 193 F.3d 380, 383 n.6 (6th Cir. 1999) (internal quotation marks omitted).

Burcham claims that the court failed in this task when it issued its order on remand adopting the magistrate's credibility determination. Burcham focuses on the court's statement that "[t]here is no basis for finding the testimony of the officers incredible as a matter of law and the Court finds that it is not so," (Order of Feb. 19, 2009, at 5), as evidence that the court did not engage in a de novo review. Burcham argues that the court's "not incredible as a matter of law" formulation is just another way of saying "not clearly erroneous," which we acknowledged was incorrect when we remanded the case the first time.

Though we acknowledge that finding testimony "not incredible as a matter of law" is a somewhat strange choice of diction, we do not agree that it evidences the employment of something other than de novo review. First, we explicitly instructed the court that it must engage in a de novo review. On remand, the court repeatedly recognized that it had erred in its first order and that it must engage in a de novo review. Indeed, in the sentence immediately preceding the sentence on which Burcham focuses, the court stated "[a]fter reviewing de novo the pleadings, the evidence presented at the suppression hearing, and the report and recommendation, the Court agrees with the findings and conclusions of the magistrate judge." (*Id.*) We ordinarily accept as given that the district courts do that which we expressly directed them to do, *see Westside Mothers v. Olszewski*, 454 F.3d 532, 539 (6th Cir. 2006) (discussing the mandate rule), and which they have expressly indicated that they have done.

Second, the entirety of the court's discussion of the differing testimony at the suppression hearing indicates that it was engaging in its own determination of the parties' credibility. For example, the court observed that Kinsella denied giving the officers the access code or the key because she possessed neither, but that the officers nevertheless took her with them to the unit. (Order of Feb. 19, 2009, at 3.) The obvious inference from this observation is that the officers would not need to take Kinsella with them if they already had the code and the key. Similarly, the court observed that Kinsella denied having heard from Burcham that the guns were stolen but had nevertheless signed a handwritten statement indicating just that. (*Id.* at 4.) These are the sorts of observations and expressions of skepticism indicative of a de novo credibility determination. We are therefore comfortable that the court employed the appropriate standard of review in ruling upon Burcham's objections to the magistrate's report, and we will proceed on the basis that the officers' version of events is the operative factual predicate.

### 2. Kinsella's Authority to Consent to Search

Burcham next argues that, even if the officers' version is credited, the search of the storage unit was still impermissible because Kinsella was not listed as an authorized user on the unit's lease agreement and did not have authority from Burcham to enter the unit or allow others to enter. Whether Burcham is correct turns on the concept of apparent authority.

Police may obtain consent to search a location from anyone having "common authority over or other sufficient relationship to the premises"; the defendant himself need not have given consent. *United States v. McCauley*, 548 F.3d 440, 446 (6th Cir. 2008) (citations omitted). Further, actual authority is not required. The consent of someone possessing apparent authority will render a search

permissible. *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990). Apparent authority exists "if the facts available to the officer at the moment warrant . . . a man of reasonable caution in the belief that the consenting party had authority over the premises." *Id.* (internal quotation marks omitted) (ellipsis in original).

Under this formulation of apparent authority, we do not have any trouble finding that the officers reasonably believed Kinsella to have authority to consent to a search of the storage unit. According to the officers' testimony, Kinsella, Burcham's girlfriend, was cooperative and provided them the access code and the key to the unit. Given the nature of storage units, it is reasonable to assume that someone close to the defendant with both the access code and key to the unit has authority to enter the unit and to allow others to do so. Confirming this, the facility's manager went from requesting a warrant to allowing unimpeded entry when he learned that Kinsella had the code and key, a reaction that implies the general understanding that possession of the code and key to a storage unit are strong indicators of access and authority. Finally, Kinsella willingly signed a consent-to-search form, and it would be odd for someone to grant consent to search a place over which she had no authority. We therefore agree with the district court that the officers reasonably believed that Kinsella had authority to consent to search the storage unit, and thus we affirm the denial of the motion to suppress.

## B.     Evidentiary Ruling

The government's general theory at trial was that two men had stolen firearms from a hunting lodge and then sold the stolen weapons to Burcham, who then sold them to his brother. One of the original thieves was a man named Bedford Watson. Watson had already pled guilty to charges

relating to the stolen firearms. He cooperated with the government and testified against Burcham in hopes of receiving favorable treatment in the form of a motion from the government seeking a reduction in Watson's sentence. Watson's status as a cooperating witness and his hope for the government's benevolence was disclosed during his direct examination by the government. And it was discussed at length during his cross-examination by Burcham's attorney, especially with regard to how it might motivate Watson to lie regarding Burcham to appease the government.

During Watson's testimony on direct examination, it was disclosed that Watson had made a false statement to prison officials regarding a fight that had occurred in prison. This disclosure was made pursuant to the requirement of *Giglio v. United States*, 405 U.S. 150 (1972), that prosecutors communicate impeachment information regarding its witnesses to the defense. Watson initially had denied involvement in the fight, but he later admitted that he was involved. In response to a leading question by the prosecutor regarding the cause of the fight, Watson confirmed that the fight was due to a card game. Burcham's attorney never cross-examined Watson regarding the cause of the fight.

During Burcham's defense case, his attorney indicated his intention to call a witness who would testify that the cause of the fight was not a card game, but rather was Watson's cooperation with the government against Burcham. Burcham sought to introduce this evidence to impeach Watson's credibility. The government objected to Burcham calling this witness, and the court sided with the government. The court initially rested its decision to exclude the witness as being an attempt to introduce extrinsic evidence to attack a witness' character for truthfulness, which is prohibited under Federal Rule of Evidence 608(b). The court later revised its reasoning for excluding the witness to rest on grounds of relevance and cumulativeness. Burcham claims that the

district court's exclusion of this evidence was reversible error.

We review a district court's evidentiary ruling for abuse of discretion. *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010) (*citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997)). Though it is clear why Burcham sought to introduce this additional evidence—to discredit Watson's damaging testimony—it is less clear how, *i.e.* under what rule of evidence, Burcham planned to introduce the evidence. Regardless, there had already been voluminous evidence regarding Watson's less-than-stellar credibility and his incentive to testify to the government's liking. Thus, we cannot say that the court's conclusion that additional attack on Watson's credibility would be cumulative was an abuse of discretion. We therefore find no error.

**III.**

For the reasons set forth above, we **AFFIRM**.