KETHLEDGE, Circuit Judge,
dissenting.
Every trial presents its own field of maneuver, with issues rising up in different places on the terrain. Some issues *703 reach commanding heights, others are just a gentle rise; some have evidence arrayed densely on each side, others have evidence more thin. Whatever the layout, the district court knows the ground better than we do. Its understanding comes from the front lines, whereas we are back in a headquarters tent. And thus we defer a great deal to the district court’s judgment as to whether a particular piece of evidence aligns with one issue, or another, or instead does not belong on the field at all.
But here the majority manages Clay’s trial from afar. It reviews de novo the question whether, under Rule 404(b), the district court admitted evidence of Clay’s prior crimes for proper purposes. I believe that is an incorrect standard of review. Although our court has a longstanding intra-circuit conflict regarding the appropriate standard of review for evidentiary decisions under Rule 404(b), the correct standard, I submit, is the deferential one that we apply to every other evidentiary ruling. See United States v. Jenkins, 593 F.3d 480, 484 (6th Cir.2010) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)); United States v. Allen, 619 F.3d 518, 524 n. 2 (6th Cir.2010) (noting that this circuit has “repudiated the three-tiered standard of review for Rule 404(b) determinations in light of’ Joiner); United States v. Haywood, 280 F.3d 715, 720 (6th Cir.2002) (rejecting precisely the standard of review that the majority employs today); Trepel v. Roadway Exp. Inc., 194 F.3d 708, 716-17 (6th Cir.1999) (citing Joiner). Indeed the very reason why the Supreme Court granted certiorari in Joiner (which is usually thought of as a Rule 702 case) was to set straight the Eleventh Circuit’s departure from “traditional ‘abuse-of-discretiori review” in reversing the evidentiary decision there. 522 U.S. at 141, 118 S.Ct. 512; see also id. at 138-39, 118 S.Ct. 512 (‘We granted certiorari in this case to determine what standard an appellate court should apply in reviewing” the evidentiary decision there). And the Court did so in categorical terms: “[AJbuse of discretion is the proper standard of review of a district court’s evidentiary rulings.” Id. at 141, 118 S.Ct. 512. We should follow that clear directive here; and I think we are simply wrong to say that we know just as well as the district court whether certain evidence is admissible for a proper purpose in light of all the issues and evidence at trial. I would defer to the district court’s decisions here and affirm.
The district court admitted evidence that, three days before the carjacking, Clay broke into a pickup truck in a parking lot and stole a “shiny” stainless steel or brushed nickel semiautomatic handgun. This evidence included security-camera footage showing an African-American man wearing a distinctively patterned red-and-white shirt that matches the shirt Clay is wearing in photos the police later found in his home. The evidence also included a checkbook and DVD player that were stolen from a car in the same parking lot, and that the police likewise found in Clay’s home.
The district court admitted this evidence because, when viewed against the backdrop of the other evidence in the case, it helped identify Clay as the person who carjacked Kathryn White three days after the thefts in the parking lot. See Fed. R.Evid. 404(b) (providing that evidence of other crimes may be “admissible for ... identity”). Specifically, an eyewitness to the carjacking testified that the “shiny” stainless steel gun that Clay stole from the pickup truck “look[ed] like” the “silver semi-automatic” gun that the carjacker brandished three days later. (Tr. 112.) And the red-and-white shirt that Clay wore while breaking into the pickup ap *704 pears identical to the shirt the earjacker is wearing in yet another security-camera photograph — this one from an ATM, about an hour after the carjacking, showing the earjacker trying to use White’s credit cards. Hence this evidence was probative of the carjacker’s identity. Such was the district court’s view of the issues and evidence first-hand.
The majority disagrees, reviewing the issue de novo. It says that nothing “confirms” that the shiny handgun in the parking-lot video was the silver one used in the cax-jacking three days later, and that the red-and-white shirt is “mass produced” and so cannot “establish a unique identity.” (Maj. Op. at 698, 700.) But the test for whether this evidence was admissible to prove identity is not whether it confirms that Clay was the earjacker; rather, the test is merely whether the evidence “tends to make it more probable” that he was. See United States v. Bonds, 12 F.3d 540, 572 (6th Cir.1993) (quotation marks and citation omitted). Even the majority concedes that the evidence supports the district court’s finding that Clay is the person shown stealing the gun on the parking-lot video. And the improbability that two different men — wearing the same distinctive shirt and possessing guns that “look[ed] like” the same one — committed these crimes only three days and two miles apart, does “tend[ ] to make it more probable” that Clay was the criminal in both. Id. Thus, the district court did not abuse its discretion in finding evidence of the parking-lot thefts admissible to prove Clay’s identity as the earjacker. And I do not think this evidence was anywhere near inadmissible under Rule 403.
The district court separately admitted testimony that Clay pistol-whipped a teenage girl a year before the carjacking. On that occasion, Clay was armed with a gun and drove up alongside the girl as she walked to work. He asked her to get into the car with him. She declined. Clay continued to drive alongside her and ordered her to stop. She did not comply, and instead began to run. He got out of his car and chased her. Eventually he caught up to her, grabbed her, and threatened to kill her if she “s[aid] anything.” (Tr. 147.) Clay then pistol-whipped the girl — striking her jaw — and fled.
The district court admitted this evidence as proof of Clay’s intent “to cause death or serious bodily harm” during the carjacking, which is an element of the offense, see 18 U.S.C. § 2119, and proof of which is a peimissible purpose under Rule 404(b). Specifically, the court found that the pistol-whipping episode was sufficiently analogous to the carjacking one to support an inference that Clay intended to harm Kathryn White or Ramona Means if White did not comply with his demands. (The government needed proof on this point because Clay did not in fact physically haxrn either woman; White complied with his demands.) In both episodes, Clay was armed with a gun, approached a female stranger, and made a demand. When the girl did not comply with his demand in the first episode, Clay followed up with serious bodily harm. Proof of the first episode thus supported an inference that Clay would have done the same thing had White not complied with his demand in the second.
The majority disagrees, again concluding de novo that the two offenses are “too unrelated and too far apart in time” to support that inference. But the path to that conclusion leads through the mire of yet another intra-circuit conflict, in which we are sunk up to the axles here. Specifically, the majority cites United States v. Bell for the proposition that evidence of prior crimes is admissible only if the prior crime was “part of the same scheme or *705 involved a similar modus operandi.” 516 F.3d 432, 443 (6th Cir.2008). But Bell’s narrow rule for the admissibility of prior-crimes evidence is “inconsistent with prior precedent and is therefore not controlling.” United States v. Hardy, 643 F.3d 143, 152 (6th Cir.2011); see also Jenkins, 593 F.3d at 485 (“Our precedents are hard to reconcile on this point”). The test for admissibility in this circuit and elsewhere has long been more permissive: whether the defendant’s conduct in prior crimes is “sufficiently analogous to support an inference” that the defendant intended to do something similar later. See United States v. Benton, 852 F.2d 1456, 1468 (6th Cir.1988). That is functionally the test the district court applied here.
Thus, in United States v. LeCroy, 441 F.3d 914 (11th Cir.2006), the court upheld the admission of evidence that the police found notes in the defendant’s car saying that he planned to “rob ears and kill people” and “rape rob and pillage” as evidence that he intended to cause harm during a carjacking 10 years later. Id. at 918, 926; see also Benton, 852 F.2d at 1459, 1467-68 (holding that the government could introduce evidence that a sheriff had accepted kickbacks to protect bootleggers to prove that the sheriff later accepted kickbacks for the purpose of protecting a cocaine-distribution scheme). The two offenses in LeCroy were no more related than the two offenses in this case. Nor were they closer in time. See also United States v. Finnell, 276 Fed.Appx. 450 (6th Cir.2008) (admitting evidence of 7-year-old crime); United States v. Love, 254 Fed.Appx. 511 (6th Cir.2007) (8 years). The district court did not abuse its discretion by admitting the pistol-whipping evidence as proof of Clay’s intent to cause serious bodily harm.
The majority alternatively concludes that this evidence was substantially more prejudicial than probative. (That makes no less than four evidentiary determinations on which the majority would reverse the district court.) It reasons that the government had other evidence of Clay’s intent: namely, his threat to shoot White and Means. But to prove “intent to cause death or serious bodily harm[,]” as required by § 2119, it was not enough for the government to prove that Clay made such a threat. The government had to prove that Clay was not bluffing when he made it — that he actually intended to shoot one of those women if WThite did not hand over her car. And given the nature of what the government had to prove — beyond a reasonable doubt, no less — the proof was going to be ugly no matter what form it took. The pistol-whipping evidence was undoubtedly prejudicial, but sometimes prejudice is fair. It was here.
The district court did not abuse its discretion in this case. I respectfully dissent.