RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0095p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAY M. SADRINIA, D.M.D.,

*Defendant-Appellant.*

No. 24-5464

Appeal from the United States District Court for the Eastern District of Kentucky at Covington.
No. 2:22-cr-00028-1—David L. Bunning, District Judge.

Argued: March 18, 2025

Decided and Filed: April 16, 2025

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Benjamin C. Glassman, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, for Appellant. Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Benjamin C. Glassman, S. Chad Meredith, G. Luke Burton, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, Beau B. Brindley, LAW OFFICE OF BEAU B. BRINDLEY, Chicago, Illinois, for Appellant. Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge. Cheyenne Witt died of a morphine overdose after her dentist, Jay Sadrinia, prescribed her that medication twice in three days. A jury convicted

Sadrinia of knowingly prescribing Witt a controlled substance without a legitimate medical purpose resulting in her death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). We hold that sufficient evidence supported Sadrinia's conviction. But we agree with him that the district court improperly admitted—as "intrinsic evidence" of the conduct charged in the indictment—testimony about bad acts unrelated to that conduct. The government, on that point, does not even argue the contrary. We vacate Sadrinia's convictions and remand his case for a new trial.

I.

Sadrinia practiced dentistry for nearly 30 years. In the summer of 2020, he owned four dental offices in northern Kentucky. Three of those offices were for general practice; the fourth—Tri-State Implant and Sedation Dentistry—was devoted to advanced surgical procedures. Sadrinia usually performed surgeries himself, with his associates handling more routine dental work. Sadrinia was licensed in Kentucky to prescribe controlled substances to his patients.

In late July 2020, Cheyenne Witt came to Tri-State for an initial consultation, accompanied by her boyfriend, Charles Vorhees. Witt complained of constant pain in her bottom jaw. She was missing teeth and had difficulty chewing because her teeth would move around in her mouth. On her patient-intake form, she recited—falsely—that she had never been addicted to drugs, did not currently use drugs, and had no history of mental illness. In fact, however, she had recently begun treatment for bipolar disorder, smoked marijuana daily, and was a recovering heroin addict (though she had not used that substance for five years). The methadone she took to treat her heroin addiction had likely caused her dental problems.

On Witt's first visit, Sadrinia saw that her jaw was deteriorating. He proposed an "All-on-Four" operation, in which he would remove Witt's lower teeth, implant a bridge, and restore her upper teeth with veneers. On August 4, 2020, Witt and Vorhees came in for a second visit; Sadrinia explained the procedure in more detail and said it would cost $37,000. Vorhees agreed to pay for the procedure, and Witt scheduled it for August 21, 2020. At the end of the appointment on August 4, Sadrinia wrote Witt three prescriptions: a sedative for anxiety, an

antibiotic to fight infection, and 30 pills of Percocet (oxycodone—a Schedule II narcotic) for pain.

Sadrinia performed the procedure on August 21. It lasted over eight hours. Afterward, Sadrinia wrote another prescription for Percocet, at a higher dose than before, to be taken no more than once every four hours. Witt's new boyfriend, Luca Godsey, drove her home from the procedure and stayed with her while she recovered. At Witt's request, Godsey kept the pills and gave Witt the prescribed dosage at the prescribed time.

The day after the operation, Godsey sent a text message to Sadrinia asking how to relieve Witt's "excruciating pain." Sadrinia said Witt could take the Percocet in 3.5-hour increments and add ibuprofen. During a post-op appointment on August 24, Sadrinia told Witt she was healing normally, but Witt said she was still in pain. Sadrinia prescribed her 24 pills of morphine (a Schedule II narcotic) at 30 milligrams each, to be taken every four-to-six hours. The pharmacy filled only 18 of the 24 pills, though, because the number of pills exceeded state regulations.

Witt returned to Tri-State on August 26. She had blisters and dry cracks around her mouth, and her lower denture needed a bite adjustment; but Sadrinia again told her she was healing normally. He wrote Witt a second prescription for morphine, this time for 30 pills at the same dosage.

On August 28, after an argument, Godsey left Witt's house. That same day, Vorhees took Witt to Tri-State for her third (and final) post-operative visit with Sadrinia. His surgical assistant tried to examine Witt's bite, but Witt had trouble staying still because she was in pain. Witt asked for more morphine, but Sadrinia did not write her another prescription then.

After that appointment, Voorhees drove Witt home. That evening, Witt's home-security camera showed that she walked out to her back porch and sat down on a lawn chair. She never moved again. Witt's stepmother contacted local police two days later; they went to Witt's home and found her lifeless body in the lawn chair. Inside the home, police found empty bottles of Percocet, amoxicillin, and morphine. The state's medical examiner performed an autopsy and

sent blood samples to an outside laboratory for toxicology testing—which showed that the concentration of morphine in Witt's blood was about triple the fatal amount.

In April 2022, a federal grand jury indicted Sadrinia on five counts. The first four alleged that Sadrinia's prescriptions to Witt on August 4, August 21, August 24, and August 26, respectively, were illegal distributions of a controlled substance without a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1). The fifth count alleged that Witt's death resulted from Sadrinia's illegal distribution of morphine to her on or about August 24 and August 26, 2020, in violation of 21 U.S.C. § 841(b)(1)(C).

In June 2023, the government filed a notice of "inextricably intertwined and/or Rule 404(b) evidence." In that notice, the government said it planned to introduce, among other things, testimony from several of Sadrinia's former employees at trial—including testimony that Sadrinia had once used another dentist's prescription pad (the paper kind) to prescribe opioids, without her knowledge, while she was out of the country. But the district court held that the government's notice came too late—only 12 days before trial—for the government to admit that testimony under Evidence Rule 404(b).

At trial, however, over the defense's objection, the government sought to introduce testimony from those same former employees. One was Elexis Widener, Sadrinia's former assistant, who said that, in December 2020, Sadrinia had used foul language when he fired her and that she had threatened to report him for malpractice. Another was Dr. Kaitlin Everidge, Sadrinia's former colleague, who said that Sadrinia had used her prescription pad while she was out of the country. The third was Dona Ducker, Sadrinia's former office manager, who testified that she had quit after Sadrinia used Everidge's prescription pad—and that, when she quit, she had warned Sadrinia, "You're going to kill someone." The court overruled all three objections because, it said, the testimony was "intrinsic" evidence of the crimes charged and relevant to Sadrinia's "knowledge and intent." All three witnesses testified at trial, without any limiting instruction regarding the jury's consideration of their testimony.

The jury later acquitted Sadrinia on Counts 1-3 (the prescriptions on August 4, 21, and 24), but convicted him on Count 4 (the prescription on August 26) and Count 5 (that Witt's death

resulted from the prescription on August 24 or August 26).  The court denied Sadrinia's post-trial motion for acquittal or a new trial, and sentenced him to the statutory minimum of 240 months' imprisonment.  This appeal followed.

## II.

## A.

Sadrinia challenges the sufficiency of the evidence supporting his convictions.  *See* Fed. R. Crim. P. 29(a).  We ask "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Jenkins*, 593 F.3d 480, 483 (6th Cir. 2010) (citation omitted).  "Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt."  *Id.*

The element at issue in Sadrinia's case was knowledge.  Unlike most defendants in § 841(a) prosecutions, Sadrinia was authorized to prescribe controlled substances.  In his case, therefore, the government was required to prove beyond a reasonable doubt that Sadrinia knew his prescriptions were unauthorized—meaning that they lacked a "legitimate medical purpose" and were outside "the usual course of his professional practice."  *See Ruan v. United States*, 597 U.S. 450, 454 (2022) (quoting 21 C.F.R. § 1306.04(a) (2021)).

Sadrinia contends that the government failed to present evidence—either direct or circumstantial—that could support an inference that he knew the morphine he prescribed on August 26 lacked a legitimate medical purpose.  But the jury heard expert testimony that 30 milligrams of morphine is rarely, if ever, appropriate for pain management in dental patients, and that such a high dosage is typically prescribed for patients in palliative, end-of-life care.  The jury also heard that—according to Sadrinia's own records from August 26—Witt was "healing normally."  And the government's expert and Sadrinia's expert alike testified that they had never prescribed morphine in their dentistry practices.

The jury also heard that Kentucky regulations normally limit prescriptions of Schedule II controlled substances to a three-day supply—and that the August 24 prescription exceeded that

limit. Accordingly, the jury heard, Witt's pharmacy had filled only 18 of the 24 pills Sadrinia had prescribed on August 24. Yet two days later, Sadrinia wrote Witt another prescription for 30 pills of morphine at 30 milligrams each—again exceeding the three-day limit.

Given that timeline, a rational jury could have concluded that Sadrinia—who had practiced dentistry for 30 years—knew that the prescription he wrote for Witt on August 26 was beyond "the usual course of his professional practice." *Ruan*, 597 U.S. at 454. Sadrinia therefore has not met his "very heavy burden" to challenge the sufficiency of the evidence under Rule 29(a). *See United States v. Emmons*, 8 F.4th 454, 478 (6th Cir. 2021).

B.

Sadrinia argues that the trial testimony of Everidge, Ducker, and Widener was evidence of prior bad acts, admitted in violation of Federal Rule of Evidence 404(b)(1). We review a district court's evidentiary determinations for an abuse of discretion. *See United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022).

Evidence of other crimes, wrongs, or acts is not admissible as propensity evidence—that is, "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence that a defendant sold drugs nine years before, for example, is not admissible to prove that he did so as charged in the case at hand. *See, e.g.*, *Jenkins*, 593 F.3d at 484-85. But evidence of other bad acts may be admitted for other purposes, such as proving a defendant's knowledge or intent. Fed. R. Evid. 404(b)(2). Even when the government seeks to admit such evidence for a permissible purpose, however, the government must give "reasonable notice" of its intent to do so. Fed. R. Evid. 404(b)(3). And here, as to these witnesses, the district court held that the government's notice was not reasonable.

Yet the district court admitted this same testimony on the ground that it was "intrinsic" to the charged crimes. Evidence is "intrinsic" when the acts are part of the same "criminal episode" as the charged offense, or "inextricably intertwined" with it. *Sadler*, 24 F.4th at 554. Hence the law treats such evidence as proof not of other bad acts, but of the charged ones. *See, e.g.*, *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). But our cases strictly limit the "temporal

proximity, causal relationship, or spatial connections" on which evidence can be deemed intrinsic to the charged offense. *Id.* at 749. And when the other acts "occurred at different times and under different circumstances from the offense charged," they are "extrinsic." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995).

Thus, the question here is not whether the testimony of the three witnesses at issue—Everidge, Ducker, and Widener—was in some lawful sense relevant to the events charged in the indictment. Instead, the question is whether their testimony concerned events so inextricably bound up with the charged conduct, or so closely related to it in time or space, as to be part of the same criminal episode.

On this record that question nearly answers itself. Widener testified that, in December 2020, Sadrinia used profanity while firing her. Relatedly, the government also introduced a text thread of an exchange in which Sadrinia called Widener "white trash" and told her, "F—k off," "U go f—k yourself bitch," and "U are crazy," among other things. Yet those outbursts had nothing to do with Sadrinia's treatment of Witt—indeed they came some four months after those events. Widener's testimony about her firing was not intrinsic; it was patently character evidence admitted in violation of Rule 404(b).

Meanwhile, Everidge and Ducker testified about events occurring some 14 months before the events charged in the indictment. Both testified that Sadrinia had used Everidge's prescription pad to prescribe Percocet for a patient while Everidge was on a mission trip in Africa. But not even the government argues that Sadrinia's use of Everidge's pad had anything to do with his treatment of Witt. Nor did certain collateral circumstances relating to Sadrinia's use of Everidge's pad—that Ducker quit over the incident, or that she warned Sadrinia, "You're going to kill someone," or that Sadrinia lied to Everidge about the drug he prescribed on her pad—have anything to do with Sadrinia's treatment of Witt more than a year later. So none of that testimony was intrinsic evidence either; again the government does not argue otherwise. The district court abused its discretion when it admitted the testimony of all three of these witnesses—Everidge, Ducker, and Widener—as intrinsic evidence.

The government does make two arguments as to this testimony, both of them meritless. The first is that—contrary to the district court's finding—the government's Rule 404(b) notice was reasonable. But the government made zero record to that effect in the district court, and we will not revisit on appeal the district court's determination, on the record before it then, that 12 days' notice was too little to be "reasonable" under Rule 404(b)(3). (We therefore do not reach the question whether any of this testimony could have been admissible under Rule 404(b)(2).)

Second, the government argues that the admission of these witnesses' testimony was harmless. But the evidence here, though sufficient, was not overwhelming. *See Jenkins*, 593 F.3d at 486. Moreover, the district court itself cited the testimony of Ducker and Everidge in finding that the evidence at trial was sufficient to convict Sadrinia. That the district court gave the jury no limiting instruction regarding its consideration of this testimony—precisely because it was admitted as "intrinsic"—makes even hollower the claim that it was harmless. And we agree with Sadrinia that "the prosecutor's closing made particularly pernicious use of the Widener testimony"—when the prosecutor emphasized, in closing argument to the jury, that Sadrinia had called his employee "white trash." Thus we cannot say with any "assurance" that these witnesses' testimony did not "substantially sway" the result at trial. *See Jenkins*, 593 F.3d at 486.

Sadrinia is entitled to a new trial. Given that holding, we choose not to reach his arguments that he is likewise entitled to a new trial on grounds of prosecutorial misconduct or because, he says, a toxicology report was admitted in violation of the Confrontation Clause.

## C.

Sadrinia argues that the district court's jury instructions and verdict form effected a constructive amendment of the indictment in violation of the Fifth Amendment. Sadrinia did not object to the jury instructions or to the verdict form at trial, so we review for plain error. *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008).

The Fifth Amendment protects a criminal defendant's right to be tried only on an indictment by a grand jury. A court violates that right when it "broaden[s] the possible bases for conviction" from those in the indictment. *United States v. Miller*, 471 U.S. 130, 138 (1985).

Here, the indictment charged that Witt's death resulted from the prescriptions "on or about" August 24 "and" August 26; whereas the court's instructions allowed the jury to convict him on Count 5 (the causing-death charge) if Witt's death resulted from Sadrinia's prescriptions on August 24 "and/or" August 26. But Sadrinia overlooks the "well-settled principle" that the government may "charge in the conjunctive and prove in the disjunctive." *United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012). That in substance is what the district court's instructions and verdict form allowed the government to do here. The court did not plainly err.

\* \* \*

Sadrinia's convictions and sentence are vacated, and the case is remanded for a new trial.