955 F.2d 45
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy A. CHICK, Defendant-Appellant.
 No. 90-2200.
 United States Court of Appeals, Sixth Circuit.
 Feb. 14, 1992.
 
 Before RALPH B. GUY, Jr., ALAN E. NORRIS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Timothy Chick, was indicted on 14 counts of mailing threatening communications in violation of 18 U.S.C. § 876. After a jury trial, he was convicted on five counts. On appeal, Chick raises issues as to the jury instructions. He also questions certain upward departures and the failure to grant a downward departure in connection with his sentence. Finding no error, we affirm.
 
 I.
 
 2
 All of the communications in question admittedly were mailed by the defendant to his former wife, Mary Chick Penzien, and her husband, Eugene, a state circuit judge. The mailings extended over a three-and-one-half-year period. The defendant, who had been in therapy for a number of years, never was able to accept the break-up of his 19-year marriage.
 
 
 3
 Although the two children born during the marriage were young adults at the time of the divorce, no small amount of the tension between the parties was generated by the usual pulling and tugging over the affection of the children, as well as Mary Penzien's immediate re-marriage after the divorce. The communicated threats, both oral and mailed, included (1) telling his daughter that he intended to kill her mother and Judge Penzien; (2) threatening to "stop" his former wife from "hurting him"; (3) slashing and burning his former wife's college diploma; (4) having a package delivered which contained a dead fish and a note delivered with instructions not to open it or "it will only hurt you"; (5) warning that there was a "price to pay for hurting his feelings" and stating that he "would do whatever I have to protect myself" and that "there will be hell to pay"; (6) sending a photo of his former wife with her face burned out of the picture; and (7) sending a clipping from an article which read, in part: "Wanting to hurt your ex is perfectly natural now. In certain countries, crimes of passion are still excused. Why wouldn't you want to kill when you think of your ex-wife in her new lover's bed? ... You might as well make them suffer. The anger goes where it belongs."
 
 
 4
 Mary and Eugene Penzien ultimately reported these incidents to the local sheriff and then to the Federal Bureau of Investigation. After investigation by the FBI, this prosecution followed.
 
 II.
 The trial judge instructed the jury that:
 
 5
 In order for the defendant to be found guilty of [mailing threatening communications], the government must prove each of the following elements beyond a reasonable doubt.
 
 
 6
 First, that the defendant wrote a threatening letter. Second, that the defendant knowingly caused the letter or other communication to be forwarded by the United States mail.
 
 
 7
 A communication, is, quote, threatening, close quote, under the law if a reasonable recipient familiar with the context of the communication would interpret it as a threat. It is not necessary for the government to prove that the defendant either intended to carry out any threat or was able to accomplish any threat.
 
 
 8
 A letter or other communication may be found to be threatening in violation of Title 18 United States Code Section 876 if it appears beyond a reasonable doubt that a reasonable recipient would so interpret it as threatening, even though it may be capable of more than one meaning. In other words, it is not necessary for the government to prove that any threat was explicit.
 
 
 9
 I said that it is not required that the defendant intended to actually harm anyone or actually carry out any threat. There must, however, be evidence that convinces you that the defendant acted with a knowledge that the contents of a letter were either threatening or likely to be interpreted as threatening when read in connection with all the other circumstances proven in the case.
 
 
 10
 (App. at 301-02).
 
 
 11
 Defendant claims that the jury should have been instructed that "they would have to find beyond a reasonable doubt that Mary Chick perceived the letter to contain a threat by defendant of bodily harm." (Def's. Brief at 29). Defendant bottoms this argument on the contention that his former wife knew of and had lived with his emotional problems for years and would have known that he would rant and rave but never hurt anyone. He therefore objects to the use of a "reasonable recipient" standard. The Seventh Circuit has had occasion to address this issue, and we agree with their conclusion:
 
 
 12
 [A]ll the statute [18 U.S.C. § 876] requires ... is that the defendant have intended to make the statement found to be a threat, and that is conceded. The test for whether a statement is a threat is an objective one; it is not what the defendant intended but whether the recipient could reasonably have regarded the defendant's statement as a threat.... "A threat is not a state of mind in the threatener; it is an appearance to the victim." The fact that the victim acts as if he believed the threat is evidence that he did believe it, and the fact that he believed it is evidence that it could reasonably be believed and therefore that it is a threat.
 
 
 13
 United States v. Schneider, 910 F.2d 1569, 1570-71 (7th Cir.1990) (citations omitted; emphasis in original). A similar result was reached in United States v. Davis, 876 F.2d 71, 73 (9th Cir.), cert. denied, 493 U.S. 866 (1989).[1]
 
 
 14
 We note, however, that, even if the test were what Mary or Eugene Penzien actually felt, there was more than ample evidence from which a jury could conclude that they felt genuinely threatened.[2]
 
 III.
 
 15
 Defendant also objects that the trial judge did not submit his theory of the case instruction to the jury. We find no merit in this contention for two reasons. First, it is not properly before us because the defendant failed to object to the instruction as given, as required by Fed.R.Crim.P. 30. Defendant submitted a theory of the case instruction to the court which was rejected as being too long, argumentative, and unsupported by the evidence. Counsel then submitted a revised version consisting of four paragraphs. The judge indicated that he would give all but the first paragraph. Defense counsel responded, "I have seen the Court's written three paragraphs, we are satisfied with that, your Honor." (App. at 298). No objections of any kind were made after the jury was instructed. Under this set of facts, defendant has waived his objections. United States v. Wilson, 639 F.2d 314, 316 (6th Cir.1981).
 
 
 16
 Even if we were to address this issue, however, we would conclude that there was no error in the instruction setting forth defendant's theory of the case.
 
 IV.
 
 17
 The Sentencing Guidelines provide in Section 3A1.1:
 
 Vulnerable Victim
 
 18
 If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.
 
 
 19
 Finding Mary Penzien to be a susceptible victim, the court meted out a two-level increase. Chick argues that this was error. The sentencing judge, who presided over the trial as well as the lengthy sentencing hearing, concluded:
 
 
 20
 The evidence to this Court is unequivocal and absolutely clear that the earlier relationship with Mrs. Penzien, including the lengthy marital relationship, lengthy and stormy between the defendant and Mrs. Penzien, the knowledge of her psychological and emotional makeup, that was clearly evidenced as known to the defendant and convinced this Court not only by a preponderance of the evidence but beyond any doubt that the defendant knew that Mrs. Penzien was particularly susceptible to this kind of criminal conduct.
 
 
 21
 (App. at 391-92). We completely agree with the trial judge. As far as Mary was concerned, the defendant knew where her pressure points were and which buttons to press and took advantage of this knowledge as part of his several-year campaign of harassment against the Penziens.
 
 V.
 
 22
 The defendant also argues that it was error for the sentencing judge to make an additional upward departure based upon the conclusion that the victims "suffered psychological injury much more serious than that normally resulting from the commission of the offense...." U.S.S.G. § 5K2.3.
 
 
 23
 When reviewing the propriety of an upward departure, we follow a three-step process: (1) plenary review of the circumstances to determine whether departure is justified; (2) determination of the existence of the circumstances relied upon which we review under the clearly erroneous standard; and (3) consideration of the reasonableness of the degree of departure. United States v. Rodriguez, 882 F.2d 1059, 1067 (6th Cir.1989), cert. denied, 493 U.S. 1084 (1990).
 
 
 24
 Applying that test here, we find the upward departure to be justified. At the sentencing hearing, the Penziens testified to experiencing fear when approaching their mail box, feeling tense and nervous for days after receipt of one of defendant's letters, suffering tension headaches, feeling frightened constantly, and planning escape routes from public places or their home should defendant appear. They also installed an alarm system in their home, secured a concealed weapons permit and kept a gun in their home for protection. Based on this and the trial testimony, the judge concluded that the psychological impact of defendant's repeated communications had "substantially impair[ed] the emotional functioning" and health of Mary Penzien and had caused "changes in behavior patterns" for both of the Penziens. (App. at 395). We agree.
 
 VI.
 
 25
 Defendant also appeals from the denial of a downward departure that he had sought on the basis of diminished capacity. U.S.S.G. § 5K2.13. Although a trial judge is given discretion to make a downward departure under the provisions of 18 U.S.C. § 3553(b), we have held repeatedly that the refusal to do so is not appealable. United States v. Pickett, 941 F.2d 411, 417-18 (6th Cir.1991).
 
 VII.
 
 26
 The sentencing judge refused to grant a two-point reduction sought by Chick for acceptance of responsibility. U.S.S.G. § 3E1.1. The conclusion that the reduction was not warranted is a factual finding which we review under a clearly erroneous standard. United States v. Williams, 940 F.2d 176, 181 (6th Cir.), cert. denied, --- U.S. ---, 112 S.Ct. 666 (1991). Sentencing Guidelines § 3E1.1, comment. (n. 2), indicates that a downward departure is not warranted when a defendant "puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Such is the case here.
 
 
 27
 Additionally, it is not at all clear that Chick ever admitted guilt. He continued to paint himself as the victim rather than the victimizer right to the end. The defendant may have expressed regret, but we agree with the trial judge's conclusion that he never really accepted responsibility.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 We tend to agree with the government's argument that cases which tend to place emphasis on the intent of the sender are distinguishable on their facts and generally involve situations such as a threat against the president which is never actually received by the president. In such cases, the intent of the sender clearly becomes paramount
 
 
 [2]
 Defendant, in 1983, had pled guilty to an assault charge stemming from an attempt to run Judge Penzien off the road. There was also one act of physical violence directed against Mary during their marriage