NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0806n.06

No. 09-2385

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 02, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

THOMAS CENSKE,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

OPINION

_____/

Before:    GILMAN and KETHLEDGE, Circuit Judges; LUDINGTON, District Judge.[*]

THOMAS L. LUDINGTON, District Judge. Appellant Thomas Censke ("Censke") was indicted by a federal grand jury on April 22, 2008, on two counts of mailing threatening communications in violation of 18 U.S.C. § 876(c). A four-count superseding indictment was returned against Censke on October 28, 2008, adding two additional counts of mailing threatening communications.

Censke represented himself. He filed a number of pretrial motions, including a motion to show cause "Why a Hearing Should Not Be Held to Evaluate the Compliance of the Government with Speedy Trial." ECF No. 155. The district court denied the motion, concluding that Censke's other pretrial motions tolled the Speedy Trial clock and that there were fifty days remaining on the

_____

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

seventy-day time period under the Speedy Trial Act. Mot. Hr'g Tr. 10-11, June 22, 2009. Censke also sought a pretrial determination that the government could not introduce evidence of threatening telephone calls to a recipient of his threatening letters. The district court concluded that the statements were admissible because they demonstrated the context of the relationship between Censke and the person who was being threatened. Alternatively, the district court concluded that the recordings were admissible as other acts evidence under Federal Rule of Evidence 404(b) because they demonstrated (1) the victim's knowledge about the seriousness of the later communication, and (2) the fact that Censke made the threats knowingly and not out of ignorance, mistake, or accident. The district court also concluded that the recordings were more probative than prejudicial and should not be excluded on that basis.

A jury trial began on July 20, 2009. Two days later, the jury returned a guilty verdict on all counts. Censke was sentenced to 120 months incarceration: 60 months on Counts 1 and 2 to be served concurrently and 60 months on Counts 3 and 4 to be served concurrently but consecutive to the sentence on Counts 1 and 2.

Censke now appeals the district court's decision regarding his Speedy Trial motion, the decision to admit the recordings of Censke's prior telephone calls, and the district court's decision to impose an above-guidelines sentence for rehabilitation purposes. For the reasons set forth herein, we **AFFIRM** the judgment of the district court concluding that Censke's Speedy Trial rights were not violated, **AFFIRM** the district court's admission of recordings of the prior telephone calls to one

of the victims as intrinsic, non-404(b) evidence or, alternatively, Rule 404(b) evidence, **VACATE** Censke's sentence, and **REMAND** for resentencing.

**I.**

Censke was indicted on two counts of mailing threatening communications on April 22, 2008. ECF No. 1. On May 5, 2008, Censke filed a motion to dismiss his appointed counsel and proceed pro se, and a motion to dismiss the indictment. ECF Nos. 9, 11. The district court entered an order for a psychiatric or psychological evaluation soon thereafter. ECF No. 18. Censke's motion to dismiss the indictment was subsequently denied, but his motion to proceed pro se was granted and his court-appointed attorney was appointed as stand-by counsel. ECF Nos. 52, 101. A superseding indictment was returned against Censke on October 28, 2008, adding two additional counts of mailing threatening communications. ECF No. 37. Specifically, the mailing of threatening communications charged in the superseding indictments included allegations of: (1) mailing a letter delivered on June 11, 2003, to Detective Steve Snowaert of the City of Marquette, Michigan Police Department containing threats to injure him; (2) mailing a letter delivered on March 9, 2006, to Pathways, a mental health clinic in Marquette, Michigan, threatening to injure Joseph Lavey II, an attorney representing Pathways; (3) mailing a letter delivered on August 28, 2006, to Priscilla Burnham, an attorney representing Planned Parenthood, threatening to injure her, Ellen Rabe-Caverly, a former employee of Planned Parenthood, and Joseph Lavey II; and (4) mailing a letter delivered on February 29, 2008, to the Baraga County, Michigan, Prosecuting Attorney threatening to injure Wendy Goodreau, the Baraga County Circuit Court Clerk.

The letters, along with the corresponding envelopes, were admitted at trial as Exhibits 1-4A. Trial Tr. vol. I, 103-09, 155, July 20, 2009. Censke mailed the letters from the Newaygo County, Michigan Jail and three different Michigan Department of Corrections prison facilities. He was in custody at the Newaygo County Jail in 2002 and 2003 while awaiting trial on federal charges for making false statements in connection with the purchase of a firearm and possessing a firearm in November 2000 after being adjudicated a "mental defective." Presentence Report ¶¶ 39, 43, 46, 127. He was in the custody of the Michigan Department of Corrections after he was convicted on January 15, 2004, on state charges for aggravated stalking and malicious use of a telecommunications device, stemming from a telephone call he made in which he threatened to kill Lavey and for threats he made towards Detective Snowaert. On February 20, 2004, Censke was sentenced to three years, four months to five years by the 25th Circuit Court in Marquette, Michigan. He remained in state custody until April 24, 2008. Presentence Report ¶¶ 46, 128.

Censke filed motions to dismiss the federal charges against him on various constitutional grounds. The district court denied these motions. ECF Nos. 9, 61, 82, 88, 101, 140. Prior to trial, Censke filed over fifty other pretrial motions and documents, which included his motion to show cause "Why a Hearing Should Not Be Held to Evaluate the Compliance of the Government with Speedy Trial." ECF No.155. The district court denied this motion, holding that Censke's other pretrial motions had tolled the Speedy Trial clock and that there were fifty days remaining. ECF No. 170; Motion Hr'g Tr. 10-11. The trial began on July 20, 2009. ECF No. 202.

The government called several witnesses to establish Censke's custodial location when the letters were mailed and to explain the mail procedure at the different institutions. Trial Tr. vol. I,

146-49,170, 174, 190, 195-96, 208-11.  The government also called Lavey, who described his past

involvement with Censke.  Lavey represented Pathways and, at Pathways' request, drafted a letter

requesting that Censke not go to Pathways' offices (the "no trespass letter").  The no trespass letter

was sent to Censke in August 2000 in response to Censke coming onto Pathways' property.  Censke

subsequently filed a lawsuit against Pathways alleging claims for defamation and requesting records.

On January 14, 2001, Censke left a profanity-laced message on Lavey's answering machine

about the no trespass letter Censke had received.  Lavey recorded the call using a handheld

dictaphone microcassette and described sounds he heard on the recording as those of a shotgun being

racked.  The recorded call was played for the jury.  Trial Tr. vol. II, 5-14, July 21, 2009.  Censke

called Lavey again that same day to ask if Lavey had received the earlier message, swore at him, and

re-emphasized the earlier threat.

A recording of an April 25, 2003, collect call that Censke made from the Marquette County

Jail to Lavey's office was also played for the jury.  James Mitchell, Jr., an attorney who worked with

Lavey, accepted the call.  Censke instructed Mitchell to tell Lavey that Censke would put Lavey in

his grave.  Trial Tr. vol. I, 233.  The district court gave a limiting instruction to the jury after the tape

recordings were played.  The limiting instruction advised the jury that it could consider the recording

only to the extent it provided context for evaluating whether Lavey reasonably believed the letters

Censke mailed him in 2006 were truly threatening and whether Censke knew of the letter and was,

in fact, the person who mailed them.  Trial Tr. vol. II, 19-20.

Later in the trial, Special Agent Timothy DeClaire of the Bureau of Alcohol, Tobacco,

Firearms and Explosives demonstrated the sound of a pump action shotgun being racked.  Trial Tr.

vol. II 61-63. Censke objected to the demonstration. Censke also filed a motion in limine in which he argued that the sound on the recorded call to Lavey was not included in the original recording, and he suggested that it was inserted by law enforcement. Alternatively, Censke argued that the sound was not that of a shotgun being racked. Trial Tr. vol. I, 8-9; ECF Nos. 175, 176. Censke's motion in limine was denied. In response to Censke's objection, the district court advised that Censke was free to argue that the sound on the recording was not a shotgun but that of a door closing or some other noise. Trial Tr. vol. I, 8-9.

Lavey testified that he felt threatened by the telephone calls, and he described some of the precautions he took, including installing deadbolt locks at his home and locking the doors to his office. Trial Tr. vol. II, 14-17. He identified the 2006 letter, which was admitted as Exhibit 2, that was forwarded to him from Pathways. *Id.* at 22. He described specific statements in the letter he took as threats, including the drawing of a gun with a flag coming out of it that said "bang;" the word "murder" spelled backwards; and the statements "Kill Joe Lavey II" and "Fuck you. Your ass is grass." *Id.* at 23-27. He subsequently learned of the letter sent to Priscilla Burnham that included the statement, "Fuck you, I'm killing Lavey just to eliminate these lawsuits, baby." Lavey testified that he took those threats seriously. *Id.* at 29-30, 59- 60.

Detective Snowaert testified that he had investigated the April 25, 2003, telephone call Mitchell received from Censke from the Marquette County Jail threatening Lavey. The same day that Mitchell received that call, Detective Snowaert received calls from the Marquette County Jail. The caller, later identified as Censke, said "Snowaert is a dead fag" and then hung up. Trial Tr. vol. II, 70. Detective Snowaert was also part of the investigation that led to Censke's arrest in 2002 on

federal firearms charges. Trial Tr. vol. II, 69-73. He identified the letter he received from Censke in the mail on June 11, 2003, and the envelope in which it was received, which were admitted as Exhibits 1 and 1A. Trial Tr. vol. II, 73-75. He described the threats contained in the letter, including a statement about "pigs" having their "head smashed or their brains splattered all over my streets"; "I like to get drunk and hunt down pigs"; "This is not a threat, it is a truth in your death sentence"; "I was thinking of killing you slowly, or slit your throat last 4 of '02 . . . "; and "your number is up." *Id.* at 75-78. Detective Snowaert testified that he took all of these threats seriously. *Id.* at 79-80.

Mark Kupferer, a retired FBI Special Agent, testified that he had interviewed Censke on March 1, 2006, while Censke was an inmate at the Oaks Correctional Facility regarding the letter sent to Detective Snowaert. Censke denied preparing the letter, but said that he had written the return address on the envelope. Agent Kupferer advised Censke that if he sent threats through the mail, he could be prosecuted in federal court. When told this, Censke became very agitated and upset, and accused Agent Kupferer of violating his First, Fourth, and Fifth Amendment rights. Trial Tr. vol. II, 104-11.

Priscilla Burnham testified that she was an attorney representing Planned Parenthood in Marquette, Michigan, and had represented Planned Parenthood in a lawsuit Censke filed against it. Trial Tr. vol. II, 118. She received a letter from Censke in August 2006, threatening to kill Lavey "to eliminate these lawsuits." *Id.* at 121, 125-26. The letter and envelope were admitted into evidence as Exhibits 3 and 3A. *Id.* The letter was directed to Burnham and Ellen Rabe-Caverly, one of the former employees of Planned Parenthood. Attached to the letter was a drawing of a silhouette of a female who appeared to be in the crosshairs of a rifle scope. *Id.* at 123. Burnham testified that

she took these threats seriously and took precautions including increasing the security at her residence. *Id.* at 126-30. Ellen Rabe-Caverly also testified that she had seen the letter and she found it to be very threatening. *Id.* at 161.

Joseph O'Leary, the Baraga County Prosecuting Attorney, testified that he had received a letter from Censke on February 29, 2008. The letter and envelope were admitted into evidence as Exhibits 4 and 4A. The letter was sent from a maximum security prison located a few miles from his office and contained a statement about the Baraga County Clerk, Wendy Goodreau, that he considered to be a death threat. Trial Tr. vol. II, 178-82. Goodreau testified that she had previously rejected documents that Censke had tried to file in the Baraga County Circuit Court. *Id.* at 210-11. She was later made aware of the letter that had been sent to O'Leary. She interpreted the letter, which threatened to make her "extinct," as a death threat. Her fear was heightened by her office's close proximity to the prison and Censke's approaching release date. *Id.* at 212-14.

An FBI handwriting expert, Peter Belcastro, examined Exhibits 1 through 4A and compared them to known handwriting samples from Censke. He testified that, in his opinion, Censke had prepared almost all of the writing on Exhibits 1 through 4A. Trial Tr. vol. III, 14-18, July 22, 2009. Belcastro could not offer an opinion as to who was responsible for the drawings included with the writings. *Id.* at 18.

Censke also testified at trial. He denied preparing or mailing the letter and corresponding envelope to Detective Snowaert, Exhibits 1 and 1A, with the possible exception of the handwriting on the front of the envelope. He admitted preparing and mailing the letters and envelopes admitted as Exhibits 2 through 4A but claimed that they were incomplete because they were missing

disclaimers Censke had included about a book he was developing. Trial Tr. vol. III, 79, 84, 91-93, 97-98, 104-06, 111-12, 117-21. He also testified that the letters were jokes and that he had no intent to carry out the actions he described in them. *Id.* at 146-47.

The jury returned a verdict on September 22, 2009, finding Censke guilty of all four counts in the superseding indictment. *Id.* at 214-15; ECF No. 205.

At sentencing, the district court, after considering several objections, concluded that the sentencing guidelines range was 70 to 87 months based on an offense level of 21 and a criminal history category of V. Sentencing Tr. 53-54, Oct. 20, 2009. The district court imposed a total sentence of 120 months based on its belief that Censke's victims and the general public deserved protection because Censke had been incarcerated for shorter periods of time that had no effect upon his conduct. The district court also based its above-guidelines sentence on its belief that the medical and psychological treatment that Censke needed would take a considerable period of time, given his mental health and criminal history. *Id.* at 82-86. Censke now appeals the district court's conclusion regarding his Speedy Trial motion, the district court's decision to allow the recordings of Censke's prior telephone calls at trial, and the district court's inclusion of rehabilitation as part of its rationale for imposing an above-guidelines sentence.

## II.

### A.

The Speedy Trial Act, 18 U.S.C. §§ 3161-74, mandates that

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or

indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

*Id.* § 3161(c)(1). The Speedy Trial Act allows exclusions of time from the seventy-day rule, including, *inter alia*,

[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant; . . . (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; . . . [and] (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable[.]

*Id.* § 3161(h)(1). The defendant bears the burden of proof to show a violation warranting dismissal.

*Id.* § 3162(a)(2). This Court reviews the district court's interpretation of the Speedy Trial Act de novo and its factual findings for clear error. *United States v. Tinklenberg*, 579 F.3d 589, 593 (6th Cir. 2010), *aff'd* 131 S. Ct. 2007, 2016 (2011); *United States v. Marks*, 209 F.3d 577, 586 (6th Cir. 2000).

Censke's pretrial motion requested a hearing to "show cause why he should not be released and [the] indictment[] dismissed" pursuant to 18 U.S.C. § 3164. Censke argued that, based on his calculations, over ninety days had expired on the Speedy Trial clock and requested that the district court evaluate the case's general compliance with the Speedy Trial Act. The district court denied this motion, concluding that Censke's other pretrial motions had tolled the Speedy Trial clock and that there were fifty days remaining. ECF No. 170; Motion Hr'g Tr. 10-11. On appeal, Censke argues that the district court should not be allowed to summarily deny a motion invoking Speedy

Trial rights and that the case should be remanded for further calculation by the district court to determine whether Censke's Speedy Trial rights were violated.

The government contends that only fifty days *elapsed* on the Speedy Trial clock. The district court, by contrast, concluded that fifty days *remained* on the Speedy Trial clock at the time the trial began. Censke submits that 255 days passed between his arraignment on the superseding indictment and the beginning of his trial. He acknowledges that some of the pretrial motions automatically tolled the Speedy Trial clock, but argues that other motions requesting continuances and extensions of time required specific findings of excludable delay by the district court in order to comply with the Speedy Trial Act. The Supreme Court has recently concluded, however, that the filing of a motion tolls the running of the Speedy Trial clock automatically, whether or not the motion actually caused or was expected to cause a delay of trial. *United States v. Tinklenberg*, 131 S. Ct. 2007, 2016 (2011), *aff'g on other grounds* 579 F.3d 589 (6th Cir. 2009). Censke also alleges that the district court should have considered what delay, if any, was excludable as to Counts 1 and 2, because those two counts were simply restated in the superseding indictment.

In cases where the district court does not make specific findings regarding the Speedy Trial clock, the appropriate remedy would ordinarily be a remand to the court with instructions to provide findings that are adequate. *Cf. United States v. Robinson*, 389 F.3d 582, 588 (6th Cir. 2004) (concluding that the district court had not adequately addressed the factors relevant to deciding whether to dismiss an indictment with or without prejudice where there is a violation of the Speedy Trial Act); *United States v. Fox*, 788 F.2d 905, 909 (2d Cir. 1986) (same). Yet " '[w]hile the decision is generally the trial court's in the first instance, remand for a hearing is not required if the

answer is so clear that no purpose would be served by a remand.' " *Robinson*, 389 F.3d at 588

(quoting *United States v. Pasquale*, 25 F.3d 948, 952 (10th Cir. 1994)); *see also Tinklenberg*, 579

F.3d at 600. Although the district court's record on Censke's challenge to his Speedy Trial rights

is not extensive, it does provide an adequate case history for a Speedy Trial determination.

Consequently, remanding the case is unnecessary.

Censke was indicted on April 22, 2008, but did not make his first appearance as to Counts

1 and 2 until May 5, 2008; thus, his Speedy Trial Act start date was May 5, 2008. The superseding

indictment charging Counts 3 and 4 was filed on October 28, 2008 and Censke was arraigned on

November 6, 2008. The trial began on July 20, 2009. Well over seventy days elapsed between the

Speedy Trial Act start date for all counts and the date of trial. The question is how many of these

days were excludable pursuant to § 3161(h).

On May 12, 2008, Censke filed two motions: a motion to dismiss the indictment and a

motion to dismiss his appointed counsel and to represent himself. ECF Nos. 9, 11. The filing of

these motions tolled the Speedy Trial clock until the hearing on the motions. 18 U.S.C. §

3161(h)(1)(D). On May 28, 2008, the district court held a hearing on Censke's motion to dismiss

counsel and to represent himself. The district court took Censke's motion to dismiss his appointed

counsel under advisement. Accordingly, the time through June 27, 2008, is excludable. 18 U.S.C.

§ 3161(h)(1)(D) (providing that a delay, not to exceed thirty days, during which a decision

concerning the defendant is under advisement is excludable delay).

The district court issued an order for psychiatric evaluation to determine Censke's

competency on June 3, 2008. The psychiatric evaluation was received on August 13, 2008, and a

competency hearing was held on September 22, 2008. The district court found Censke competent to proceed, and his appointed counsel's motion to withdraw was granted. An order reflecting the district court's findings was entered on September 23, 2008, ordering that the office of the Federal Public Defender recommend a replacement from the Criminal Justice Act panel to represent Censke. ECF No. 26. On September 29, 2008, the district court appointed another attorney to represent Censke. Accordingly, the time from the district court's order for a psychiatric examination on June 3, 2008, to the time of the hearing at which Censke was found to be competent on September 22, 2008, is excludable from the Speedy Trial clock. 18 U.S.C. § 3161(h)(1)(A). Moreover, the delay between the district court's order on September 23, 2008, granting Censke's appointed counsel's motion to withdraw, and the district court's appointment of new counsel on September 29, 2008, is excludable as a period of delay resulting from other proceedings concerning Censke that have been taken under advisement by the court. 18 U.S.C. § 3161(h)(1)(H); *United States v. Namer*, 149 F. App'x 385, 396-97 (6th Cir. 2005) (treating a ten-day delay between granting an attorney's motion to withdraw and the appointment of new counsel as excludable under provision excluding time when a motion is "under advisement"). As a result, from the time of Censke's initial appearance and arraignment on May 5, 2008, through September 29, 2008, only six days had elapsed on the Speedy Trial clock.

On October 28, 2008, a superseding indictment was filed. ECF No. 37. From September 30, 2008, to October 27, 2008, twenty eight days elapsed, for a cumulative total of thirty four days on the Speedy Trial clock. The time between the filing of a superseding indictment and a defendant's subsequent rearraignment is excludable time. *United States v. Van Someren*, 118 F.3d

1214, 1219 (8th Cir. 1997) (involving a superseding indictment similar to the original indictment); *United States v. Kelly*, 45 F.3d 45, 48 (2d Cir. 1995) (per curiam) ("[W]e see no reason why the tolling provisions of section 3161(h)(6) should not guide our treatment of the period between the filing of a superseding indictment and the defendant's arraignment thereon"); *see also United States v. Layne*, 23 F.3d 409, 1994 WL 142813, at *3 (6th Cir. 1994) (unpublished table decision) (concluding that the Speedy Trial clock started running at the later of the filing of the superseding indictment or defendant's first appearance thereon).

On October 31, 2008, Censke filed a motion for leave to appear pro se and to continue with his court-appointed counsel as standby counsel. ECF No. 38. A hearing on this motion was held on December 11, 2008, and the district court issued an order denying Censke's motion as moot on December 12, 2008. ECF No. 45. As previously discussed, the time from the filing of this motion to the hearing and entry of the order is excludable time. 18 U.S.C. § 3161(h)(1)(D), (H). Accordingly, from September 30, 2008, to December 12, 2008, the total time elapsed on the Speedy Trial clock remained at thirty four days.

On December 29, 2008, Censke filed a motion for an ends of justice continuance, for discovery, and to proceed pro se. ECF No. 47. Censke's appointed counsel also filed a motion for an ends-of-justice continuance on December 31, 2008. ECF No. 48. The district court granted the requests on January 15, 2009, excluding the time from January 15, 2009, to the new date of trial, which was subsequently established as May 18, 2009. ECF Nos. 50, 53. The district court held a hearing on January 23, 2009, on Censke's motions filed on December 29, 2008, including the motion to proceed pro se. That same day, the district court entered an order granting Censke's motion for

discovery, an ends-of-justice continuance, and to proceed pro se, with his court-appointed attorney designated as standby counsel. ECF No. 52. The time from the filing of Censke's motions on December 29, 2008, through the hearing on those motions on January 23, 2009, is excludable from the Speedy Trial clock pursuant to 18 U.S.C. § 3161(h)(1)(D). The court's ruling granting the ends-of-justice continuance until May 18, 2009, tolled the Speedy Trial clock until that date. Accordingly, from December 13, 2008, to December 28, 2008, sixteen days elapsed on the Speedy Trial clock, for a cumulative total of fifty days through May 18, 2009.

On February 13, 2009, the government filed a motion to compel Censke to provide discovery. ECF No. 71. On February 18, 2009, the district court conducted an initial pretrial conference, during which discovery matters were discussed, and on February 20, 2009, the district court entered an order granting the government's motion to compel Censke to provide discovery, setting a deadline of April 3, 2009, for Censke to comply. ECF No. 82. On April 9, 2009, the government, still without Censke's discovery materials, filed a motion to extend the time to file motions in limine and requested an ends-of-justice continuance of the trial date because Censke had yet to provide the compelled discovery. ECF No. 126. Censke filed a response noting that he did not oppose the government's motion. ECF No. 134. The district court subsequently held a status conference via telephone on April 22, 2009, where Censke voiced no objection to adjourning the trial to July 2009. The subsequent order rescheduling the trial for July 20, 2009, did not, however, contain any language characterizing the basis for the rescheduled trial date as an ends-of-justice continuance. ECF No. 137.

Although the district court continued the trial date with Censke's verbal approval and even though the delay was attributed in part to Censke not providing the compelled discovery, the time period is not excludable as an ends-of-justice continuance because the district court did not make an explicit ends-of-justice finding. *Zedner v. United States*, 547 U.S. 489, 500 (2006). Censke's verbal consent to a forthcoming delay is insufficient because he may not prospectively waive his rights under the Speedy Trial Act. *United States v. Turner*, 602 F.3d 778, 783 (6th Cir. 2010).

Even though the time period from May 18, 2009, to the rescheduled trial date of July 20, 2009, is not excludable on the basis of an ends-of-justice continuance, Censke's Speedy Trial rights were nevertheless not violated. On March 30, 2009, Censke filed a notice of interlocutory appeal from a district court order denying his motion to dismiss the indictment.[1] ECF No. 118. "[T]here is an automatic exclusion for any delay resulting from an interlocutory appeal. 18 U.S.C. § 3161(h)(1)(E). This exclusion is not premised upon a trial court action staying trial proceedings." *United States v. Pelfrey*, 822 F.2d 628, 635 (6th Cir. 1987) (automatically excluding the time between when the interlocutory appeal was filed by the government and decided by the Court of Appeals notwithstanding that the district court refused to stay the lower court proceedings during the pendency of the appeal). On June 22, 2009, the district court noted in an order that it would not delay trial pending resolution of the interlocutory appeal. ECF No. 167. This, however, does not

---

[1] Censke filed two other notices of interlocutory appeal on March 30, 2009 and May 6, 2009. ECF Nos. 120, 143. This Court dismissed Censke's March 30, 2009, interlocutory appeal for lack of jurisdiction on June 18, 2009, and dismissed Censke's May 6, 2009, interlocutory appeal on December 23, 2009. ECF Nos. 166, 234.

affect the tolling of the Speedy Trial clock.  On July 24, 2009, this Court filed an "Information Copy" of its decision affirming the order of the district court. ECF No. 207.

In sum, as of the July 20, 2009, trial date, a cumulative total of fifty days elapsed on the Speedy Trial clock.  The district court thus did not err in concluding that there was no violation of the Speedy Trial Act.

### B.

This Court reviews the district court's evidentiary determinations for abuse of discretion. *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010); *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009).  "Broad discretion is given to district court determinations of admissibility based on considerations of relevance and prejudice."  *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006).  "An abuse of discretion occurs when a district court relies on clearly erroneous findings of fact, improperly applies the law or uses erroneous legal standards."  *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005).  The Court will reverse a district court's evidentiary decision only if it is "left with the definite and firm conviction" that the lower court erred.  *Id.*

### 1.

The morning the jury trial began, the district court decided that the recordings of Censke's prior threatening telephone calls to Lavey were admissible.  Trial Tr. vol. I, 3-7.  The district court emphasized that the government was required to prove that the communications referred to in the indictment contained true threats and concluded that the recordings were admissible as evidence of Censke's prior conduct to place his later threatening letters in context.  *Id.* at 3-4.  The district court reasoned that the probative value of the recordings outweighed any unfair prejudice because of the

government's burden of proving Censke's knowledge and lack of ignorance, mistake, or accident. *Id.* at 6-7. Moreover, Censke's defense that the letters were about a book he was writing or, alternatively, were sent as "jokes" placed Censke's intent squarely in issue in addition to the recipients' perception of Censke's intent.

A letter or other communication violates 18 U.S.C. § 876 if it appears beyond a reasonable doubt that a reasonable recipient would interpret it as threatening, even though it may be capable of more than one meaning. *United States v. Chick*, 955 F.2d 45, 1992 WL 27033, at *2 (6th Cir. Feb. 12, 1992) (unpublished table decision); *see also United States v. Schneider*, 910 F.2d 1569, 1570-71 (7th Cir. 1990) ("The test for whether a statement is a threat is an objective one; it is not what the defendant intended but whether the recipient could reasonably have regarded the defendant's statement as a threat"). It is not required that the defendant intend to actually harm anyone or actually carry out any threat. *Chick*, 1992 WL 27033, at *2. There must, however, be evidence that convinces the jury that the defendant acted with knowledge that the contents of a letter were either threatening or likely to be interpreted as threatening when read in connection with all the other circumstances proven in the case. *Id.*;

Federal Rule of Evidence 404(b) excludes evidence of other crimes, wrongs, or acts that is being offered to prove the character of a person in order to show action in conformity therewith. Crimes or other wrongs that are unrelated to the charged offense are considered "extrinsic," and are generally not admissible, except under limited circumstances. Intrinsic acts, acts that are "inextricably intertwined" with the crime charged or that are "part of a single criminal episode," however, are admissible and beyond the reach of Rule 404(b). *See United States v. Everett*, 270 F.3d

986, 992 (6th Cir. 2001); *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995).

"Background" evidence also does not implicate Rule 404(b). *United States v. Hardy*, 228 F.3d 745,

748 (6th Cir. 2000). "Proper background evidence has a causal, temporal or spatial connection with

the charged offense." *Hardy*, 228 F.3d at 748. Such evidence is typically a "prelude to the charged

offense, is directly probative of the charged offense, arises from the same events as the charged

offense, forms an integral part of a witness's testimony, or completes the story of the charged

offense." *Id.*

Censke argues that admitting the recordings as intrinsic evidence was improper because his

identity was not at issue; ignorance, mistake, or accident were not at issue; nor was his intent at

issue. He also argues that the calls evidenced by the recordings did not have a close temporal

connection to the letters Censke sent because the calls concerned Censke's discontent with Lavey's

representation of Pathways and Lavey's pursuit of criminal charges against Censke. The calls were

not near in time to the charged offenses or part of an inextricably intertwined pattern of conduct. *See*

*id.* Censke's argument is unpersuasive.

The 2003 recording, of course, has a closer temporal connection than the 2001 recording;

however, both recordings "complete[d] the story of the charged offense." *Id*. Stated more plainly,

the objective standard of whether a reasonable person would foresee that the statement would be

interpreted as a threat is not something determined in a vacuum: Censke's earlier conflict with the

victims is critical information for the jury to weigh in deciding whether the later threat constitutes

a "true threat," or, as Censke characterized it, a joke. Moreover, the recordings were not unfairly

prejudicial because evidence that undermines one's defense by virtue of its "legitimate probative

force" does not unfairly prejudice the defendant. *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). Because the district court did not abuse its discretion in allowing the recordings into evidence, Censke's appeal of the district court's ruling to allow the recordings as background evidence will be denied.

**2.**

Alternatively, the district court concluded that the recordings were admissible as "other acts evidence" under Rule 404(b) to prove Lavey's state of mind that he perceived the letters as true threats. Trial Tr. vol. I, 4. The district court excluded any reference to Censke's convictions for prior conduct. *Id.* The district court also explained that it would give the jury a limiting instruction, advising them that they could consider the earlier phone calls only in deciding whether Lavey reasonably believed that the written communications amounted to a serious expression of an intent to inflict bodily harm. *See* Trial Tr. vol. III, 193-94 (providing a limiting instruction advising the jury that the recordings could be considered only as they related to the issue of whether Lavey reasonably believed that the communications amount to a serious threat and Censke's knowledge of his actions).

Federal Rule of Evidence 404(b) provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to provide the character of a person in order to show action in conformity therewith." Such evidence may, however, "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). In deciding whether to admit evidence under this rule, the district court must apply the balancing test of Federal Rule of Evidence 403. Rule 403 provides that

"[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." To determine whether other acts evidence is admissible, a district court undertakes a four-part inquiry: (1) the government must identify the specific purpose for which the evidence is being offered; (2) the court must determine whether the identified purpose is relevant to a material issue; (3) the court must weigh the evidence under Rule 403; and (4) the court must "clearly, simply, and correctly" instruct the jury as to the specific purpose for which it may consider the evidence. *United States v. Wells*, 211 F.3d 988, 999-1000 (6th Cir. 2000).

This Court employs a three-part test when reviewing a decision pursuant to Federal Rule of Evidence 404(b). First, the Court reviews for clear error the district court's determination that the other acts occurred. Second, the Court reviews de novo the district court's legal determination that the evidence was admissible for a proper purpose. Finally, the Court reviews for abuse of discretion the district court's determination that the probative value of the other acts evidence outweighs the unfairly prejudicial effect. *United States v. Stephens*, 549 F.3d 459, 462 (6th Cir. 2008); *United States v. Ayoub*, 498 F.3d 532, 547 (6th Cir. 2007).

In the present case, it is not disputed that Censke made the prior calls; Censke disputes only the sound of a shotgun in the background of one of the recordings. Thus, the first step in the Rule 404(b) analysis is satisfied.

"Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002) (citing *United States v. Johnson*, 27

F.3d 1186, 1190-91 (6th Cir. 1994)).  The government asserts that the recordings were introduced for the proper purpose of: (1) proving the context and circumstances surrounding Lavey's reaction to the written threats contained in the letters that were the basis of Counts 2 and 3 of the superseding indictment, establishing the reasonableness of that reaction, and proving that the letters qualified as "true threats," and (2) establishing Censke's identity as the person who sent the letters.  Appellee's Br. at 36.

As previously noted, there must be evidence that convinces the jury that the defendant acted with a knowledge that the contents of a letter were either threatening or likely to be interpreted as threatening when read in connection with all the other circumstances proven in the case.  *Chick*, 1992 WL 27033, at *2.  Censke's centrals argument were that his statements in the letters were taken out of context, that he was a whistleblower, that his statements were political, and that his statements were made in a joking manner.  Trial Tr. vol. I 87-99.  Whether Censke acted with the knowledge that the contents of the letter he sent to Lavey would be interpreted as threatening was thus put squarely in issue, and the recordings were evidence that Lavey perceived the letter as a "true threat." The district court's determination that the evidence was admissible for a proper purpose was sound, and the second step in our Rule 404(b) analysis is satisfied.

Censke also argues that the recordings were more prejudicial than probative and should have been excluded because of the danger that the jury would treat the records as propensity evidence. *Jenkins*, 593 F.3d at 486.  Where the probative value is minor and there are other methods of proving the case, Censke argues that the Court should weigh the balance in the favor of unfair prejudice. *Id.* at 485-86.  Censke alleges that the government could have established a "preexisting negative

relationship" between Lavey and himself without admitting the recordings into evidence. Appellant Br. at 23. The calls that were recorded were made between two years and three months before the letters were sent, and the temporal proximity of the prior act is instructive to the Court's assessment of the probative value of the evidence compared to its prejudicial effect. *See Jenkins*, 593 F.3d at 486 (concluding that the prejudicial effect of evidence of an eight-year-old drug conviction substantially outweighed the probative value of the evidence because of the danger of the jury treating it as propensity evidence).

Even though the telephone calls to Lavey predated the threatening letter by three to five years, they are not so remote in time to fail in providing proof that Censke knew, or should have known, that the statements in his letter would be perceived as true threats. Moreover, even if the district court erred in admitting the evidence, we must still determine whether its admission was harmless. The Court considers what the error meant to the jury in relation to all that happened. *United States v. Pugh*, 405 F.3d 390, 400 (6th Cir. 2005). Because the district court's admission of the recordings as intrinsic evidence was not clear error, any error in alternatively admitting the recordings as Rule 404(b) evidence was, in turn, harmless error.

## C.

Censke claims that the district court impermissibly based its sentence, at least in part, on the promotion of rehabilitation by relying on Censke's need for medical care and psychological treatment. Censke's claim thus constitutes a challenge to the substantive reasonableness of the sentence. *United States v. Jimenez*, 605 F.3d 415, 423 (6th Cir. 2010). A sentence may be substantively unreasonable "when the district court selects the sentence arbitrarily, bases the sentence

on impermissible factors, fails to consider pertinent section 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007); *see* 18 U.S.C. § 3582(a) (cautioning that "imprisonment is not an appropriate means of promoting correction and rehabilitation").

Sentences outside the advisory guidelines range are not presumptively reasonable or unreasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006). Although the standard of review does not change based on whether a sentence is inside, just outside, or significantly outside the Guidelines range, the greater the district court's variance, the more compelling the evidence must be. *Gall*, 552 U.S. at 50; *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008). When a district court considers the "relevant Section 3553(a) factors in-depth and reaches its determination that the appropriate sentence varies outside the advisory guidelines range," this Court is "very reluctant to find the sentence unreasonable." *United States v. Collington*, 461 F.3d 805, 811 (6th Cir. 2006). "Doing so would essentially amount to substituting [this Court's] judgment for the district court's as to how long the defendant should serve." *Id.*

The district court emphasized two section 3553(a) factors in particular in imposing an above-guidelines sentence: protecting the public from further crimes and providing Censke with the necessary medical care and psychological treatment because of his long history of mental instability. *See* 18 U.S.C. § 3553(a)(2)(C)-(D). The district court reasoned that Censke's behavior needed to be "normalized" and that he had not yet learned that the "behavior that he sometimes exhibits will not be tolerated." Sentencing Tr. 84. The district court anticipated that Censke's recommended

psychological and anger management treatment would "take a considerable length of time . . . longer than the period provided by the guidelines." *Id.* The district court did not consider whether the above-guidelines sentence could be justified as a departure pursuant to section 5K2 of the Sentencing Guidelines Manual. Indeed, Censke's medical care and psychological care concerns would not have furnished a justification for an upward departure. *See* U.S.S.G. § 5H1.3.

As a practical matter, however, district courts have relied on section 3553(a)(2)(D) to impose a lengthier sentence in order for a defendant to meet the eligibility requirements for an institutional program that he or she would otherwise be ineligible for under a shorter sentence. For example, an individual is not considered for the Residential Drug Abuse Program ("RDAP") through the Federal Bureau of Prisons ("BOP") unless he or she has at least 24 months remaining on his or her sentence.[2] BOP Program Statement # 5330.11 at 9, 11 (Mar. 16, 2009), *available at* http://www.bop.gov/DataSource/execute/dsPolicyLoc (last visited November 7, 2011). Upon successful completion of the program, an individual is eligible for up to a twelve-month sentence reduction based on the length of the original sentence imposed if their current or past criminal history

---

[2] RDAP is a 9- to 12-month, 500-hour institutional program followed by a four- to six-month program in a halfway house. Office of Defender Services Training Branch, *Bureau of Prisons Residential Drug Abuse Program Reference Chart*, 1, *available at* http://www.fd.org/pdf_lib/2009%20RDAP%20Chart.pdf (last visited November 7, 2011). To qualify, an inmate must: (1) have a documented pattern of substance abuse in the 12 months prior to arrest for which he/she is serving his/her current sentence; (2) be able to complete all three phases of RDAP, including community transition drug abuse treatment; and (3) be diagnosed by the Drug Abuse Program Psychologist as having a drug use disorder as defined by the American Psychiatric Association's Diagnostic and Statistical Manual (DSM). Federal Bureau of Prisons, *Substance Abuse Treatment FAQ's*, *available at* http://www.bop.gov/inmate_programs/substanceabuse_faqs.jsp (last visited November 7, 2011).

does not include a serious violent offense. Thus, although the district court may impose a lengthier sentence to qualify a defendant for RDAP, the defendant could, upon successful completion of the program, serve a shorter sentence than would have otherwise been imposed.

Although section 3553(a)(2)(D) requires that the district court consider Censke's need for "educational or vocational training, medical care, or other correctional treatment," section 3582(a) cautions "that imprisonment is not an appropriate means of promoting correction and rehabilitation." The conflict between section 3553(a)(2)(D) and section 3582(a) has recently been resolved by *Tapia v. United States*, 131 S. Ct. 2382, 2393 (2011). *Tapia* held that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise promote rehabilitation." A review of the sentencing transcript reflects that the district court did precisely what *Tapia* forbids. Because the district court "bas[ed] the sentence on impermissible factors," its decision to impose an above-guideline sentence was substantively unreasonable. *See Webb*, 403 F.3d at 385. Censke's sentence, however, was not based solely on his need for medical care, but was justified in part on the need to protect the public from further crimes. The inquiry thus turns to whether Censke's sentence still complies with section 3582(a).

Before discussing Censke's need for psychological treatment, the district court concluded that a period of custody longer than called for by the guidelines was required to protect Censke's victims and the general public from future crimes, as well as because his prior shorter periods of custody had no effect on Censke's conduct. Sentencing Tr. 83-84. Given the district court's perception of the need to incapacitate Censke, it is likely that a similar sentence of imprisonment would have been imposed even in the absence of a need for medical and psychological care. This Court is not,

however, to substitute its judgment for that of the district court and to presume that the term of custody would have been the same if Censke's need for medical care and psychological care was not considered by the district court. Moreover, this is not a case where the sentence is justified by traditional penological considerations and the district court merely recommended that available rehabilitation services be afforded. *See United States v. Hoffa*, 587 F.3d 610, 615 (3d Cir. 2009) (observing that even though § 3582(a) bars consideration of rehabilitation concerns in deciding whether and how long to imprison, where imprisonment and its length are justified by traditional penological considerations, the sentencing judge is free to recommend that available rehabilitation services be afforded). Censke's sentence shall thus be vacated and the case remanded to the district court for resentencing.

## III.

For the reasons set forth above, we **AFFIRM** the judgment of the district court concluding that Censke's Speedy Trial rights were not violated, **AFFIRM** the district court's admission of recordings of the prior telephone calls to one of the victims as intrinsic, non-404(b) evidence or, alternatively, as Rule 404(b) evidence, **VACATE** Censke's sentence, and **REMAND** for resentencing.